HOLLOWAY, Circuit Judge.
The central question on this appeal is whether the district court properly entered an order appointing a trustee for liquidation of the defendant-appellant Blinder, Robinson & Company, Inc. (Blinder, Robinson), under the Securities Investor Protection Act of 1970 (SIPA,), 15 U.S.C. §§ 78aaa to 78III, where the court’s determinations underlying the order were based mainly on the filing of a voluntary Chapter 11 petition under the Bankruptcy Code.[1]
I
On July 30, 1990, Blinder, Robinson, a registered stockbroker, filed a voluntary Chapter 11 bankruptcy petition in the District of Colorado. Invoking the special procedures for liquidating financially troubled members, the Securities Investor Protection Corporation (SIPC)[2] the next day filed an application in the district court seeking a judicial decree to protect the customers of Blinder, Robinson.
The district court promptly convened a hearing on the application late on the afternoon of its filing.[3] At the hearing, Blinder, Robinson’s counsel requested an opportunity to present evidence to dispute one of the findings required for the court to appoint a trustee to liquidate the firm. Specifically, Blinder, Robinson’s counsel asserted that the firm could present evidence that would create a factual dispute under 15 U.S.C. 78eee(b)(l)(A) as to whether it was “unable to meet its obligations as they mature.” E.g., III R. 48-49. The judge scheduled a hearing at 10 a.m. the following morning. Further details as to the nature of that hearing and the procedure followed are given in Part IV, infra.
The next morning the court heard legal arguments and statements on the factual circumstances from counsel for the SIPC, the SEC, and Blinder, Robinson. On consideration of these statements and legal authorities submitted, the court ruled that as a matter of law, Blinder, Robinson’s act of filing the Chapter 11 petition satisfied two of the four statutory conditions precedent for the issuance of a protective decree under the SIPA. First, the court concluded that the Chapter 11 filing prevented Blinder, Robinson from meeting “its obligations as they mature,” thus satisfying the condition in § 78eee(b)(1)(A). See III R. 45-47. Second, the court decided that as a debtor in possession in a Chapter 11 proceeding Blinder, Robinson “in effect” was “a type of trustee,” thus satisfying the condition in § 78eee(b)(1)(B). See id.[4]
*963 The district judge then granted the SIPC’s application for a protective decree and, in accordance with the statute, appointed a trustee designated by the SIPC to liquidate Blinder, Robinson. In her written order, the district judge stated, inter alia: that the customers of Blinder, Robinson are in need of the protection afforded by SIPA; that Mr. Keller was appointed trustee with the duties and powers prescribed by the act, and a $100,000 fidelity bond was required; that the creditors and other persons were notified that the automatic stay provisions of 11 U.S.C. § 362(a) operated as a stay of the commencement of judicial proceedings, the enforcement of judgments, and “any act to obtain possession of property of the estate or of property from the estate,” inter alia; and that any pending bankruptcy was stayed. Other provisions required by the statute were also included.
The district judge was requested to stay her order pending appeal, but denied that relief, and the trustee began liquidating Blinder, Robinson upon appointment.[5]
In this appeal, Blinder, Robinson challenges the district court’s finding of the existence of two of the statutory grounds necessary for the appointment of a trustee. It also claims a deprivation of due process by the rapid manner in which the district court acted on the SIPC application without an evidentiary hearing. In addition, Blinder, Robinson contends the district judge erred by refusing to stay her order pending appeal.
II
The SIPC may initiate a liquidation proceeding by applying to a court for a protective decree if it determines that a member “has failed or is in danger of failing to meet its obligations to its customers,” and if it finds the existence of one or more of the four specified statutory conditions precedent. 15 U.S.C. § 78eee(a)(3)(A)-(B) (1988).[6] The statutory conditions are “suggestive of financial irresponsibility.” SIPC v. Barbour, 421 U.S. 412, 416, 95 S.Ct. 1733, 1736, 44 L.Ed.2d 263 (1975).
Upon the filing of an application for a decree, the SIPA requires a court to act promptly. The act instructs a court to hear an application for a protective decree within three days after filing “or at such other time as the court shall determine, taking into consideration the urgency which the circumstances require.” § 78eee(b)(l) (emphasis added). If a court finds any one of the four listed statutory conditions, it “shall forthwith issue” a protective decree and “shall forthwith appoint” a trustee for *964 the liquidation of the broker-dealer. § 78eee(b)(l), (b)(3). The act further precludes litigation over the appointment of the trustee; the statute requires a court to appoint as trustee, and as attorney for the trustee, “such persons as SIPC, in its sole discretion, specifies.” § 78eee(b)(3).
In connection with the procedural background, we note that the SIPC and the Securities and Exchange Commission (SEC) argue that as a licensed stockbroker Blinder, Robinson was prohibited by statute from seeking to reorganize under Chapter 11. The Bankruptcy Code provides that “[o]nly a person that may be a debtor under chapter 7 of this title, except a stockbroker ... may be a debtor under chapter 11 of this title.” 11 U.S.C. § 109(d) (1988) (emphasis added). To the extent that the SIPC and the SEC argue that it is inappropriate for a stockbroker to reorganize under Chapter 11, Congress has spoken clearly through § 109(d): stockbrokers may not use Chapter 11 procedures. Nevertheless, whether proper or not,[7] at the hearing before the district court it was common ground, as shown by the statements of counsel, that Blinder, Robinson had filed the Chapter 11 proceeding.
A more relevant question before us on this appeal is whether the action against Blinder, Robinson was properly brought by the SIPC under SIPA. Section 78eee(a)(3) authorizes the SIPC to initiate a liquidation proceeding against “any member of SIPC [ Jincluding any person who was a member within one hundred eighty days prior" to the SIPC’s initial determinations of financial instability of such member. § 78eee(a)(3)(A). Since it remained a member of the SIPC on the date of the filing of this SIPA proceeding,[8] Blinder, Robinson was subject to the SIPA liquidation proceeding.
Ill
We turn now to the district court’s ruling that Blinder, Robinson’s filing under Chapter 11 made it clear, as a matter of law, that the broker was “unable to meet its obligations as they mature.” The SIPC’s reasoning, which the district court adopted, was that “Blinder, Robinson would be prohibited under Chapter 11 from satisfying its obligations to its customers without a Chapter 11 Plan or an order of the court.” Brief of Appellee SIPC at 7 (emphasis in original). We are convinced that the district court’s ruling was proper under the correct construction of the statutory phrase concerning a member’s ability to meet “its obligations as they mature.”
We read the term “obligations” in § 78eee(b)(l)(A) to include a broker-dealer’s general as well as financial obligations to *965 both its customers and to others.[9] The phrase “as they mature” should be read to mean that the condition would be satisfied if the stockbroker was unable to meet its obligations on demand. We believe such an interpretation is in keeping with the intent of the legislation overall. As the Supreme Court has recognized, the SIPA liquidation proceeding for stockbrokers was “designed to accomplish the completion of open transactions and the speedy return of most customer property.” Barbour, 421 U.S. at 415, 95 S.Ct. at 1736; see also H.R.Rep. No. 1613, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.C.C.A.N. 5254, 5262 (explaining SIPA “establishes procedures for the prompt and orderly liquidation of SIPC members when required”).
The record indicates that the district court predicated its ruling primarily upon a single, undisputed event — Blinder, Robinson’s filing of the Chapter 11 petition. However, the record reveals other circumstances supporting the ruling. Blinder, Robinson’s counsel made it clear at the August 1 hearing that the firm had customers to whom it owed money or securities, and that it had incomplete transactions with those customers.[10] Though the court’s statements were generally stated as legal determinations, they also serve as findings of fact supporting the district court’s determination that Blinder, Robinson was a stockbroker as of the date of the SIPC’s application, whose customers needed the protection of the act. III R. 44-45, 47.
Our review, however, focuses upon the district court’s analysis that the Bankruptcy Code as a matter of law prevents a party who files a Chapter 11 petition from meeting obligations as they mature, arguably a legal fiction in this case since Chapter 11 protection is not available to stockbrokers, and the provisions of the Bankruptcy Code applicable to a Chapter 11 proceeding do not address many aspects of a broker-dealer’s operation. Many provisions of the Bankruptcy Code potentially could impede Blinder, Robinson’s ability to satisfy its obligations as they matured; we note selectively some of the possibilities.
From the standpoint of the customers, the automatic stay provision of the Bankruptcy Code that took effect upon the filing of the Chapter 11 petition prevented them from taking virtually any action to collect debts owed to them or to recover their property held by the broker-dealer. The automatic stay “provides for a broad stay of litigation, lien enforcement, and other actions, judicial or otherwise, which would affect or interfere with property of the estate, property of the debtor, or property in the custody of the estate.” 2 Collier on Bankruptcy ¶ 362.01, at 362-8 to-9 (15th ed. 1992); see 11 U.S.C. 362(a) (1988 & *966 Supp. II 1990). One provision of § 362(a) operates as a stay of “any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate,” 11 U.S.C. § 362(a)(3) (1988). A further provision of § 362(a), applicable to all entities, stays “any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title....” § 362(a)(6); see also In re Price, 103 B.R. 989, 992 (Bankr.N.D.Ill.1989) (noting “telephone call to collect a pre-petition debt” prohibited under stay), aff'd, 130 B.R. 259 (N.D.Ill.1991). Thus the automatic stay provisions clearly appear to inhibit attempts by the customers to obtain their money or property from Blinder, Robinson.
As one basis for its argument, the SIPC appears to have relied[11] in part upon the provision in the Bankruptcy Code that allows a debtor in possession in a Chapter 11 case, to “avoid” certain transfers of property of the Chapter 11 estate made after the petition was filed. See 11 U.S.C. § 549 (1988). The section enables a debtor in possession to avoid postpetition transfers of estate property that are unauthorized by the Code or that are authorized by listed sections. § 549(a)(2)(A)-(B). In general terms, the “property comprising the estate ... includes all legal or equitable interests of the debtor in property ... as of the commencement of the case.” 4 Collier on Bankruptcy 541.06, at 541-26 (15th ed. 1992); see 11 U.S.C. § 541(a) (1988). We agree with the SIPC’s position that § 549 could have restricted Blinder, Robinson’s use of the property of the estate.
In sum, the provisions of Chapter 11 did serve as substantial obstacles to Blinder, Robinson’s meeting its obligations as they matured.
IV
Blinder, Robinson argues further that the rapid actions of the district court on the SIPA application and entry of the order denied due process of law. We do not agree.
The circumstances of the case demonstrated the urgent need for action by the court on the SIPC application. This was apparent from the fact that Blinder, Robinson itself had filed a Chapter 11 proceeding. At the first conference of the court with the attorneys shortly after the afternoon filing of the SIPC application, appearances were entered by an attorney for the SIPC, an attorney for the SEC, and two counsel for Blinder, Robinson. There were statements by counsel for the SIPC and the court that the hearing the next day would be for consideration of appointment of a receiver, described by the SIPC counsel as a “temporary receiver.” II R. 12.
SIPC counsel submitted a statement of its position and the citation to Securities and Exchange Comm’n v. Alan F. Hughes, Inc., 461 F.2d 974 (2d Cir.1972). The judge invited counsel to submit citations in the interim before the hearing at 10 a.m. the next day, suggesting a conference by the attorneys in the courtroom immediately to
let you talk together and see if you can come to some agreement. If we do have clear statutory and case law, then there really shouldn’t be much to argue about; and maybe you can work this out between the two sides before 10:00. Other *967 wise, I’ll be here and we’ll get this resolved tomorrow morning.
II R. 16.
The next morning the proceedings commenced at 10 a.m. and again appearances were entered by attorneys for the SEC and the SIPC and two counsel for Blinder, Robinson. The attorneys referred to the initial request for a temporary receiver to be appointed, and the judge stated that she felt that “this is the hearing under § 78eee(b). I intend that this be the hearing that the statute calls for as to whether there should be a protective decree. I don’t see any reason for not proceeding and getting this taken care of immediately.” III R. 20. This statement by the judge near the commencement of the morning hearing thus changed the character of the proceeding from one to consider appointment of a temporary receiver under § 78eee(a)(4)(A) to one to consider the application for a protective decree and the appointment of a trustee under § 78eee(b)(l).
We must agree that a serious question might exist on the due process aspect of the proceedings, except for the fact that the admitted facts demonstrate that there was no actual prejudice to Blinder, Robinson in light of our earlier analysis. It is true that Hughes holds that due process is satisfied as long as the district court, after providing the broker-dealer with an opportunity to be heard, makes an independent determination that the broker-dealer has failed or is in danger of failing to meet its obligations to its customers. Hughes, 461 F.2d at 979; see also SIPC v. Charisma Securities Corp., 506 F.2d 1191, 1194 (2d Cir.1974) (court is required to make independent judgment and findings whether brokerage firm is in need of protection of the act and may not merely rubberstamp the SIPC recommendation). We agree fully that the stockbroker is entitled to the protections outlined in Hughes and to the opportunity to challenge the administrative findings at an evidentiary hearing generally. However, as we have explained here, the admitted circumstances, mainly the filing of the Chapter 11 proceeding by Blinder, Robinson itself and its obligations to customers that could not be met due to the Chapter 11 proceeding, show that the evi-dentiary hearing requested by Blinder, Robinson and proffered testimony could not have demonstrated a defense to the application of the SIPC.[12]
The statute itself mandates expeditious consideration of such an application by SIPC which “shall be heard three business days after the date on which it is filed, or at such other time as the court shall determine, taking into consideration the urgency which the circumstances require.” § 78eee(b)(l). At the hearing the morning after the SIPC application was filed, the court heard arguments by the attorney for the SIPC and then by two attorneys for Blinder, Robinson. These arguments addressed the merits of the issues under § 78eee(b) — the issuance of the protective decree and appointment of a trustee. Blinder, Robinson’s counsel made the argument that because the firm had withdrawn as a broker-dealer, it was eligible to file proceedings under Chapter 11. However, the court pointed out that 17 C.F.R. § 240.-15b6-1(b) indicates that such withdrawal from registration does not become effective until 60 days after the withdrawal was filed, unless the SIPC takes some action to expedite the withdrawal, and no such action had been taken.
Having heard the arguments from all counsel, the judge stated she was prepared to decide the issue as a matter of law: that Blinder, Robinson was still a stockbroker; that while it was not entitled as a stockbroker to proceed under Chapter 11, Blinder, Robinson was attempting to put itself under the protection of Chapter 11; that as a matter of law it “is unable to meet its obligations as they mature”; that both § 78eee(b)(l)(A) and (B) are satisfied as a matter of law — the “unable to meet its obligations” provision and the provision in *968 which a stockbroker places itself in the position of a trustee; and that by reason of the Chapter 11 filing, Blinder, Robinson was unable to meet its obligations as required by law so that its customers were in need of the protection afforded by § 78eee.
Due to the circumstances admitted by counsel at the argument — the prior commencement of Chapter 11 proceedings by Blinder, Robinson and the legal consequences we have discussed earlier — there was no denial of due process. A further evidentiary hearing and argument would have been unavailing, and in light of the expedition mandated by the statute we hold that here there was neither prejudice from the prompt action by the court nor a denial of due process by the procedure followed by the court in these circumstances.
V
Lastly, Blinder, Robinson contends that the judge erred in refusing to grant a stay of her order pending this appeal. We again find no merit in the argument. As a basis for such a stay, the movant was required to show the district court: (1) its strong position on the merits of the appeal; (2) irreparable injury if the stay was denied; (3) that a stay would not substantially harm other parties to the litigation; and (4) that the public interests favor a stay. Battle v. Anderson, 564 F.2d 388, 397 (10th Cir.1977). We are persuaded that no such showing was presented to the district court and that the denial of the stay was proper.
AFFIRMED.

. The Securities and Exchange Commission participated in this case under its statutory authority to appear upon its own motion in SIPC customer protection proceedings. See 15 U.S.C. 78eee(c) (1988). The court-appointed trustee for the liquidation of Blinder, Robinson, Glen E. Keller, Jr., also participated in this case.

. Congress authorized the formation of the SIPC as a nongovernmental, nonprofit, membership corporation. 15 U.S.C. 78ccc(a)(1), (a)(2)(A). The members of SIPC include "all brokers and dealers who are members of a national securities exchange, the National Association of Securities Dealers, or are otherwise registered under the Securities Exchange Act of 1934 unless an exception is granted.” 4 Collier on Bankruptcy Stockbroker Liquidation at INT-4 (15th ed. 1992); see 78ccc(a)(2)(A).

. The district court clerk stamped the SIPC application as filed at 3:56 p.m. on July 31, 1990. The record indicates that just under an hour after the filing, the district court convened a conference with the parties, at which it scheduled a hearing for the following morning.

.The court summarized the rationale for the rulings:
It appears to the Court that the debtor has put itself in I guess what has been referred to as a Catch-22 situation. They have attempted to put themselves under Chapter 11. If they are under Chapter 11, then as a matter of law, they are unable to meet its obligations — their obligations as they mature, because they would be violating Chapter 11. And even though the defendant is not admitting today that they are unable to meet obligations as they mature, they have stated on the record that, or I understand on the record that they are not operating as stockbrokers. The doors are closed, and they are apparently not doing business.
Ill R. 45-46.

. On August 3, 1990, Blinder, Robinson filed a motion in this court for a stay pending appeal pursuant to Rule 8 of the Federal Rules of Appellate Procedure. On consideration of the motion and supporting documents filed, and responses, this court denied a stay pending appeal on August 10, 1990. The court found that the petitioner, Blinder, Robinson, had failed to show that it had a likelihood of success on the merits and the existence of irreparable harm.

. The relevant part of the statute provides:
(3) Action by SIPC
If SIPC determines that—
(A) any member of SIPC (including any person who was a member within one hundred eighty days prior to such determination) has failed or is in danger of failing to meet its obligations to customers; and
(B) one or more of the conditions specified in subsection (b)(1) of this section exist with respect to such member, SIPC may, upon notice to such member, file an application for a protective decree with any court of competent jurisdiction. ...
[[Image here]]
(b) Court action
(1) Issuance of protective decree
Upon receipt of an application by SIPC under subsection (a)(3) of this section, the court shall forthwith issue a protective decree if the debtor consents thereto, if the debtor fails to contest such application, or if the court finds that such debtor—
(A) is insolvent within the meaning of section 101 of title 11, or is unable to meet its obligations as they mature;
(B) is the subject of a proceeding pending in any court or before any agency of the United States or any State in which a receiver, trustee, or liquidator for such debtor has been appointed;
[[Image here]]
Unless the debtor consents to the issuance of a protective decree, the application shall be heard three business days after the date on which it is filed, or at such other time as the court shall determine, taking into consideration the urgency which the circumstances require.
15 U.S.C. § 78eee(a)(3), (b)(1) (1988).

. Blinder, Robinson defends the appropriateness of its Chapter 11 petition. It contends that it had ceased doing business as a stockbroker prior to filing the Chapter 11 petition by withdrawing its registration with the SEC. We view this argument as largely irrelevant because this is not a bankruptcy court trying to decide whether Blinder, Robinson was entitled to file the voluntary Chapter 11 petition; moreover, the principal issue before the district court was not whether the SIPA proceeding was a more appropriate procedure than a Chapter 11 action, but rather whether the SIPC was entitled to liquidate Blinder, Robinson.
As part of its contention that its Chapter 11 petition was valid, Blinder, Robinson further argues that other brokers have reorganized under Chapter 11. The SEC represents to us on brief that the circumstances of those proceedings were unusual and are distinguishable. We agree that the fact that those proceedings occurred is not persuasive evidence here because we must instead decide whether the district court’s rulings granting the SIPC application were correct in these circumstances.

. By regulation, Blinder, Robinson remained a member of the SIPC even though it had filed with the SEC a withdrawal of its registration as a securities broker-dealer. Blinder, Robinson’s counsel told the district court that the firm had submitted a notice of its withdrawal from registration on July 30, the day it filed the Chapter II petition and two days before the hearing. See III R. 22. Absent special action by the SEC Blinder, Robinson’s withdrawal from registration became effective on the 60th day after the withdrawal was filed, see 17 C.F.R. § 240.15b6-1(b) (1990), and its withdrawal from the SIPC became effective six months later, see id. -1(c).
At the hearing, Blinder, Robinson’s counsel conceded, "[o]ur client is a member of SIPC. Our client is—may well be as far as the SEC is concerned—have a license to sell securities.” III R. 39.

. The condition appears to contain two different indicators of financial instability. The first part of the condition incorporates the definition of insolvency in the Bankruptcy Code. See 11 U.S.C. § 101(32) (Supp. II 1990). In general, then, the condition may be satisfied if the broker-dealer’s debts are greater than the value of its property holdings. See id. The second part of the phrase complements the Bankruptcy Code definition, and expands the scope of the condition, by providing a different standard of an entity’s overall financial health, its ability to meet its general financial obligations.

. For example, Blinder, Robinson's counsel told the court in the hearing that “[t]he business of Blinderf] Robinson today is to liquidate its assets, to perform its obligations to its customers, and to distribute the money to its creditors. ” III R. 35 (emphasis added). When the district court asked counsel how Blinder, Robinson would respond if customers asked for “their stock and their cash on deposit, " Blinder, Robinson’s counsel replied, “It gives it to them." Id. at 35 (emphasis added).
Later in the hearing, counsel for Blinder, Robinson told the court ■
We are prepared to show, if the Court wishes us to do so, ... that the customers of Blinderf,] Robinson will be protected in two ways: first, that the clearings that are contemplated over the next week and thereafter will be completed by the debtor in possession; and secondly, that we have made arrangements to transfer future clearing obligations to qualified, competent organizations which can complete ... all of the transactions which may for one reason or another not be completed within a very short period of time and that the customers’ accounts will be transferred to these organizations subject to, I guess, the customer’s approval.
Ill R. 37 (emphasis added).
We note also that the Chapter 11 petition shows that Blinder, Robinson had creditors.

. On appeal, the SIPC did not cite specific sections of the Bankruptcy Code in support of its position that the Chapter 11 filing necessarily would have prevented a debtor in possession from meeting its obligations as they matured. We address § 549(a) in particular because the SIPC cited it in a memorandum submitted to the district court as authority for its argument that
[t]here can be no doubt that the cash and securities Blinder[,] Robinson owes to customers are pre-petition obligations which cannot be paid in Chapter 11. 11 U.S.C. Section 549 allows a trustee or debtor in possession to avoid any transfer of property that occurs after the commencement of the case and which is not done pursuant to an order of the court or a plan of reorganization. It is evident that these "customers” have mature claims which Blinder[,] Robinson is legally incapable of satisfying at present. Supplemental Memorandum of Law in Support of Application of the SIPC at 3-4 (emphasis in original).

. The application alleged the determinations by the SIPC that Blinder, Robinson had "failed to meet its obligations to its customers within the meaning of § 78eee(a)(3)” and that one of the conditions of § 78eee(b)(l) existed — that "Defendant is not able to meet its obligations as they mature.” I R. Doc. 1, at 2.