**WASTE CONNECTIONS OF KANSAS, INC., et al., Plaintiffs,**

v.

**CITY OF BEL AIRE, KANSAS, Defendant.**

**No. CIV.A. 02–1035–MLB.**

United States District Court, D. Kansas.

March 29, 2002.

David M. Traster, William M. Anderson, Foulston & Siefkin L.L.P., Wichita, KS, April D. Cover, Lincoln, NE, for plaintiffs.

James S. Pigg, Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, Lee E. Parker, Office of the City Attorney, City of Bel Aire, Bel Aire, KS, for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

On March 1, 2002, this court denied plaintiffs' motion for a temporary and/or preliminary injunction. Doc. 17. Plaintiffs filed a notice of appeal on March 5, 2002. Doc. 19. This matter is currently before the court upon plaintiffs' motion to stay or for an injunction pending appeal. Doc. 21. For the following reasons, plaintiffs' motion is DENIED.

Before addressing plaintiffs' motion, it is helpful to set forth the procedural history of this case. Plaintiffs filed a motion for injunctive relief based, in part, upon their contention that the City's Ordinance violated the dormant Commerce Clause. This court denied plaintiffs' motion for injunctive relief on that point because it found plaintiffs were not likely to prevail on the merits. Specifically, the court found that the City was a "market participant" and therefore was not bound by the dormant Commerce Clause when purchasing recycling services from a single provider. Doc. 17, p. 12–19. Even assuming the City was not a market participant (and was therefore subject to the strictures of the dormant Commerce Clause), the court alternatively held that plaintiffs failed to show that the burdens on interstate commerce were clearly excessive in light of the benefits the City sought. Doc. 17, p. 18 n. 11. Plaintiffs' motion to stay rests solely upon this court's application of the market participation doctrine to a selective process that, according to plaintiffs, was not fair because it violated Kansas law. Doc. 21, p. 2.

 Pursuant to Fed. R. Civ. P. 62(c), this court has the discretion to enter a stay pending resolution of plaintiffs' interlocutory appeal. *See* Fed. R. Civ. P. 62(c); *Dutton v. Johnson County Bd. of County Commrs.*, 884 F.Supp. 431, 433 (D.Kan. 1995). In order to obtain such a stay, plaintiffs must show (1) they have a "strong position" on the merits of their appeal, (2) irreparable injury will result if their stay is denied, (3) their requested relief would not substantially harm defendant, and (4) the public interests favor a stay. *See Securities Investor Protection Corp. v. Blinder, Robinson & Co.*, 962 F.2d 960, 968 (10th Cir.1992) (relying upon *Battle v. Anderson*, 564 F.2d 388, 397 (10th Cir.1977)). Plaintiffs' motion fails to address this (or any other) standard and, instead, sets forth two cases they claim support their fairness argument. The court could deny plaintiffs' motion for this reason alone. Nonetheless, the court will construe plaintiffs' lone argument as its support for the "strong position" element of the test. For the reasons discussed below, the court finds plaintiffs have failed to meet their burden.

 Before delving into the analysis of plaintiffs' assertion, it is helpful to contextualize the debate. The dormant Commerce Clause essentially prohibits the states or its political subdivisions like the City from regulating interstate commerce. Doc. 17, p. 7–8. The market participant doctrine is an "exception" to the dormant Commerce Clause jurisprudence. Doc. 17, p. 9. Thus, if the City engages in market participation, as opposed to market regulation, it may choose its trading partners without the constraints of the dormant Commerce Clause. Doc. 17, pp. 9–19; *see also Reeves, Inc. v. Stake*, 447 U.S. 429, 438, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980)

(finding that a State, when acting as a market participant, should "share existing freedoms from federal constraints, including the inherent limits of the Commerce Clause").

Plaintiffs seek a stay based upon their belief that the City cannot be a "market participant" because the City allegedly engaged in "closed-door decision-making," Doc. 21, p. 2, in violation of the Kansas Open Meetings Act, KAN. STAT. ANN. § 75–4318(b).[1] In support of this assertion, plaintiffs rely upon *Houlton Citizens' Coalition v. Town of Houlton,* 175 F.3d 178 (1st Cir.1999) and *Harvey & Harvey, Inc. v. County of Chester,* 68 F.3d 788 (3d Cir.1995). As discussed in more detail below, neither of these cases support the proposition that the market participation doctrine's applicability hinges upon a "fair" bidding process.

■ Contrary to plaintiffs' contention, there is no fairness element in the market participation inquiry. The applicability of the market participation doctrine turns solely upon whether the governmental entity is "participating" in the economy or "regulating" the flow of interstate commerce. Doc. 17, pp. 8, 11. When a governmental entity participates in the market, it may, without running afoul of the United States Constitution, favor its citizens over the citizens of another state. Doc. 17, p. 13. Conversely, the Constitution, or, more appropriately, dormant Commerce Clause jurisprudence, prohibits or at least restricts such favoritism when the governmental entity attempts to regulate interstate commerce. Doc. 17, p. 8.

■ Ignoring the relevant distinction between "participation" and "regulation," plaintiffs argue that the City's allegedly unfair and/or discriminatory bidding process puts the City's decision to purchase services "outside the reach of the market participant exception to Commerce Clause jurisprudence ...." Doc. 21, p. 2. The weakness of plaintiffs' contention becomes clear upon its application to the purpose of the market participation doctrine. Under the doctrine, the City, when deciding to purchase goods or services (i.e., to participate), may make any decision it wants, free from constitutional constraints,[2] even if that decision reeks of blatant parochialism. Doc. 17, pp. 13, 19. Plaintiffs' suggested appendage to the market participation doctrine would apparently still permit the City to *ultimately* make decisions that were "unfair" or discriminatory against out of state entities so long as the *bidding process* was "fair."

■ This court has not been shown any legal authority or rational reason for plaintiffs' position. Perhaps the lack of authority on this point stems from the imperfect logic driving the assertion. Plaintiffs essentially want the City to "fairly" consider all bids, despite the fact that the City can ultimately "unfairly" make the final decision.

Despite plaintiffs' assertion, neither *Houlton Citizens' Coalition v. Town of Houlton,* 175 F.3d 178 (1st Cir.1999) [hereinafter *Houlton* ] nor *Harvey & Harvey, Inc. v. County of Chester,* 68 F.3d 788 (3d Cir.1995) [hereinafter *Harvey & Harvey* ] support appending a "fairness" element to

---

1. This is a new argument. In their application for injunctive relief, plaintiffs claimed that the City violated certain notice requirements set out in KAN. STAT. ANN. § 12–5504(a), Doc. 5, p. 11; Doc. 16, p. 10. Plaintiffs did not claim violations of the Open Meetings Act, even though they now assert that many violations occurred prior to the filing of their case.

2. The Equal Protection Clause, however, would prohibit the governmental entity from making its participation decision based upon suspect classifications. *See, e.g., Brown v. Board of Educ.,* 347 U.S. 483, 495, 74 S.Ct. 686, 98 L.Ed. 873 (1954). This situation is not, however, presented here.

the market participation doctrine. To begin with, both cases involved municipal ordinances that were unquestionably municipal *regulations* subject to the dormant Commerce Clause analysis. *See Houlton*, 175 F.3d at 188; *Harvey & Harvey*, 68 F.3d at 796–97, 803–04. As such, the market participation doctrine, by definition, did not apply. Doc. 17, p. 9. Moreover the ordinances in both cases were, at least in part, "flow-control" ordinances, *see Houlton*, 175 F.3d at 181–82; *Harvey & Harvey*, 68 F.3d at 804–05, something this court noted that the City's Ordinance is not,[3] Doc. 17, p. 11.

There is a more fundamental and substantive reason these cases do not support plaintiffs' position. The "fairness" inquiry in both cases originated and sprung from the respective courts' attempt to discern whether the municipalities' regulations were facially "discriminatory." *See Houlton*, 175 F.3d at 188–89; *Harvey & Harvey*, 68 F.3d at 801. If, for example, the municipalities treated all potential bidders "fairly" in effecting their regulations, the more deferential *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) balancing test would apply. *Compare Blue Circle Cement, Inc. v. Board of County Commrs.*, 27 F.3d 1499, 1511 (10th Cir.1994); *with Houlton*, 175 F.3d at 189 (applying the *Pike* test after finding the bidders were treated fairly). On the other hand, the municipalities' failure to treat all potential bidders in a "fair" or non-discriminatory manner would (presumably) give rise to a presumption that the regulation was *per se* in violation of the dormant Commerce Clause. Doc. 17, p. 9 (citing *Blue Circle Cement, Inc.*). In finding the City, whose Ordinance embodied the City's decision to participate in the

market, was a market participant, this court had neither need nor opportunity to consider whether the City's acts were "fair" or discriminatory.[4] *See Reeves, Inc. v. Stake*, 447 U.S. 429, 436, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980) (referring to *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 809, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976)) ("Having characterized Maryland as a market participant, rather than as a market regulator, the Court found no reason to 'believe the Commerce Clause was intended to require independent justification for [the State's] action.' "); *see also* Doc 17, p. 17–18 (citing *Buchwald v. University of New Mexico Sch. of Medicine*, 159 F.3d 487, 496 n. 9 (10th Cir.1998)). That inquiry is simply not relevant once a governmental entity has been determined to be a market participant.

Not only does plaintiffs' motion fail to satisfy the "strength" prong, it also fails to address, much less satisfy, any of the three remaining aspects of the standard this court must use to determine whether to issue the requested stay. *See Securities Investor Protection Corp. v. Blinder, Robinson & Co.*, 962 F.2d 960, 968 (10th Cir. 1992). Considering plaintiffs have the burden of establishing these elements, the court will not grant plaintiffs' requested relief.

A final point must be made regarding plaintiffs' current motion. For the first time, plaintiffs urge this court to consider the self-serving letter their attorney submitted to the Attorney General for the State of Kansas. Doc. 21, "Spencer Affidavit, Att. A." This letter supposedly illustrates evidence of the City's unfairness. Because this court was not presented with

---

**3.** Plaintiffs do not, at least in the current motion, disagree with this observation.

**4.** Even assuming the market participant doctrine does not apply, plaintiffs do not suggest

in their motion that this court's holding that the Ordinance, if a regulation, sufficiently satisfies the *Pike* balancing test. Doc. 17, p. 18 n. 11.

this "evidence" in plaintiffs' original motion for injunctive relief and it is irrelevant to the market participation analysis, this court has not and will not consider it here.

For the preceding reasons, the court DENIES plaintiffs' motion, Doc. 21. The clerk is directed to send a copy of this Memorandum and Order to the clerk of the Tenth Circuit.

IT IS SO ORDERED.