**Donald E. WILDMON and American Family Association, Inc., Plaintiffs– Appellants–Appellees,**

**v.**

**BERWICK UNIVERSAL PICTURES, et al., Defendants–Appellees– Appellants.**

**No. 92–7611.**

United States Court of Appeals, Fifth Circuit.

Sept. 22, 1992.

---

Benjamin W. Bull, Scott L. Thomas, Dennis H. Staffelbach, Amer. Family Assoc. Law Center, Tupelo, MS, for appellants.

Kay L. Trapp, Phelps Dunbar, Tupelo, MS, Luther T. Munford, Phelps Dunbar, Jackson, MS, Martin Garbus, Russell Smith, Frankfurt, Garbus, Klein & Selz, New York City, for appellees.

Before KING and WIENER, Circuit Judges.*

BY THE COURT:

IT IS ORDERED that the motion of Appellees to vacate the stay and injunction entered by the district court pursuant to FRCP 62(c), and request to expedite the appeal, are GRANTED.

On September 8, 1992, Plaintiffs–Appellants, Donald E. Wildmon (Wildmon) and American Family Association, Inc. (AFA), were denied all relief sought when the district court ruled in favor of Appellees (Defendants) by granting its Order and Final Judgment, dismissing Plaintiffs' primary claim and denying their motion for summary judgment. 803 F.Supp. 1167. In the conclusion to its Order and Final Judgment, however, the district court "invited" Wildmon and AFA "to immediately move for a stay pending appeal pursuant to Fed. F.Civ.P. 62(c) and *United States v. Baylor Universal (sic) Medical Center*, 711 F.2d 38, 39 (5th Cir.1983). Two days later, when filing their timely notice of appeal, Wildmon and AFA accepted the district court's invitation by filing a Motion for Stay Pending Appeal and Injunction on Distribution of the Film in the United States Pending Appeal.

* This case is being decided by a quorum. See 28 U.S.C. § 46(d).

On September 15, 1992, the district court issued an order staying judgment pending appeal. Noting that "unlimited distribution" of the film ("Damned in the USA") would have an "irreversible effect" and possibly moot Plaintiffs' appeal, and again citing *Baylor*, the district court found that "equities weigh heavily in favor of maintaining the status quo," and thus enjoined "distribution and/or exhibition" of the film. The court also dispensed with the requirement that Wildmon and AFA post a supersedeas bond. On September 18, 1992, Defendants filed in this court an Emergency Motion ... to Vacate Stay and Injunction Entered Pursuant to Fed.R.Civ.P. 62(c).

We review the action of the district court in staying the effect of its own order and judgment and in granting the attendant injunction for "abuse of discretion." *Beverly v. United States*, 468 F.2d 732, 740–41 n. 13 (5th Cir.1972). In so doing this court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). We find that to be the case here.

In its invitation to Wildmon and the AFA to file a motion for a stay, the district court cited *Baylor* as the appropriate legal foundation; Plaintiffs relied on *Baylor* in their application; and the district court again relied on *Baylor* in pretermitting consideration of the well known quartet of criteria required for relief pursuant to Fed. R.Civ.P. 62(c) and for injunctive relief in general:

> [I]n order to be entitled to a stay pending appeal under Rule 62 F.R.Civ.P. or 8 F.R.A.P., a petitioner must show the likelihood of his prevailing on the merits on appeal, that he is likely to suffer irreparable injury from the denial of the stay, that the other parties will not be substantially harmed by the grant of stay, *and* that granting the stay will serve the public interest.

*Drummond v. Fulton County Department of Family & Children's Serv.*, 532 F.2d 1001, 1002 (5th Cir.1976), *rev'd on other grounds*, 547 F.2d 835 (5th Cir.1977) (emphasis added); *quoting Beverly*, 468 F.2d at 740–41 n. 13. The reliance of the district court and Plaintiffs on *Baylor* as authority to disregard those criteria is misplaced. They cite *Baylor* for the proposition that "the movant 'need only present a substantial case on the merits'" to avoid application of the four factors. Regrettably, by quoting that one phrase only, the essence of *Baylor* is misrepresented. *Baylor* is only correctly understood as dispensing with rigid application of the four *Drummond* factors when viewed in light of the full quotation that is the gravamen of the case:

> [I]n *Ruiz v. Estelle*, 650 F.2d 555 (5th Cir.1981) this Court held that the movant "need only present a substantial case on the merits *when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay.*" *Id.* at 565 (emphasis added).

*Baylor*, 711 F.2d at 39.

The first *Ruiz* factor which the *Baylor* court relied on is the only one quoted by the district court and Plaintiffs here, i.e., that movant need only present a substantial case on the merits. A fair reading of *Ruiz* and *Baylor* shows that presentation of a substantial case is only the threshold requirement. That threshold step alone is not sufficient. Even granting for the sake of argument the substantive sufficiency of Plaintiffs' case on the merits here, we find they can neither demonstrate involvement of a "serious legal question" as that term is used in *Ruiz* and interpreted and applied in *Baylor*, nor demonstrate a heavy weight of equity in favor of the stay or the injunction.

In *Baylor*, we determined that the serious legal question involved was whether Medicare and Medicaid payments constitute federal financial assistance within the meaning of the Rehabilitation Act *because* "that could have a broad impact on federal/state relations" which could open "the doors of private institutions to the probing tools of an HHS investigation." *Baylor*,

711 F.2d at 40. No such serious legal question is involved here. This case involves only a private contractual matter, at least from the standpoint of Wildmon and AFA. Whether the particular contract at issue does or does not permit exhibition or distribution of the film containing excerpts of the interview covered by the contract drawn by counsel for Wildmon and AFA is of no concern to others. Except for the Plaintiffs, the results of this dispute have no far-reaching effects or public concerns to anyone—unlike those at issue in *Baylor*.

The same analysis holds true for the "balance of equities" weighing heavily in favor of granting the stay—they simply do not. We find first that the likelihood of Plaintiffs' success on the merits is slim. A reading of the district court's careful and lengthy opinion is all that is needed to support our conclusion on that factor.

Neither has there been a showing of irreparable injury to Plaintiffs if the stay is not granted. The district court never mentioned "irreparable injury." The closest it came was the use of the term "irreversible effect," not a generally recognized term of art in the law of stay and injunction. Moreover, when parties such as Wildmon and AFA, who have drafted their own agreement, expressly advert to the possibility of a breach and specify the remedy as liquidated monetary damages—with no mention of injunction—injunctive relief is virtually waived. By definition, "irreparable injury" is that for which compensatory damages are unsuitable, yet compensatory damages is precisely the remedy prescribed by Plaintiffs in the contract drafted by their counsel. And, as Defendants note, if any party to the suit is exposed to irreparable injury, it is they, not Wildmon and AFA. Exhibiting the film at the Boston film festival can never again happen if it does not happen on September 22nd. Additionally, the subject matter of the film is a timely one, so that each day of delay in the general distribution of the film diminishes its currency and its value.

That, too, goes to the third factor, possibility of harm to other parties. Clearly Defendants could suffer harm were the stay and the injunction perpetuated.

To the extent that the fourth factor—interest of the public—is involved one way or the other, that interest certainly augurs in favor of exhibiting and distributing the film, not in keeping it under wraps. The court found the film's presentation of Wildmon and his point of view to be fair and even-handed; even Wildmon and AFA do not contend that the film inaccurately or unfairly depicts Wildmon or his position. The thrust of Plaintiffs' argument is that the film depicts other images of the type that Wildmon and AFA crusade against, images they label as "blasphemous." Ironically, the evidence shows that Wildmon and AFA have used some of the very same images to demonstrate the importance of their cause and rally support for their efforts. We are unable to discern, for purposes of the instant injunction, where the difference in such disseminations lies.

We conclude that, even when we grant for the sake of argument that Plaintiffs have presented a "substantial case on the merits," no serious legal question is involved and the balance of equities does not weigh heavily in favor of granting the stay or the injunction. To the contrary, from the vantage point of the Plaintiffs, the legal question involved is serious only to them, not the general public; and the balance of equities weighs heavily in favor of lifting the stay and vacating the injunction, not maintaining them. The district court clearly abused its discretion here in staying its own order and judgment and in enjoining exhibition and distribution of the film. We therefore order the stay lifted and the injunction vacated. We do see merit, however, in expediting Plaintiffs' appeal from the district court's Order and Final Judgment of September 8, 1992. The Clerk shall establish an expedited briefing schedule.

STAY PENDING APPEAL LIFTED; INJUNCTION VACATED; APPEAL EXPEDITED. The parties shall bear their own costs in connection with these proceedings.