**McGREGOR PRINTING CORPORATION,**
Plaintiff,

v.

**Ira L. KEMP, et al., Defendants.**

**Civ. A. No. 91–3255.**

United States District Court,
District of Columbia.

Sept. 30, 1992.

John P. Meade, O'Connor and Hannan, Washington, D.C., for plaintiff.

Theodore C. Hirt, Jeffrey L. Darsie, Attys., Dept. of Justice, for Ira L. Kemp, Committee for Purchase from the Blind and Other Severely Handicapped and U.S.

Douglas Rigler, Scott A. Ritchie, Kaplan Russin & Vecchi, Washington, D.C., Paul M. Frank, Daniel J. O'Neill, Walter, Conston, Alexander & Green, P.C., New York City, for National Industries for the Blind.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

In this action, plaintiff McGregor Printing Corporation ("McGregor") challenges an informal rulemaking decision of the Committee for Purchase from the Blind and Other Severely Handicapped ("Committee") to add computer tabulating machine paper to a list of commodities and services which the federal government procures solely from blind and handicapped workshops. Before the Court are plaintiff's and defendants' cross motions for summary judgment. For the reasons which follow, we deny plaintiff's Motion for Summary Judgment and grant summary judgment for the defendants.

### I. *Background*

Plaintiff, McGregor, is a prior government contractor which provided part of the government's needs for a type of tabulating machine paper, NSN 7530-00-800-0996 ("0996"), a continuous, flatfold computer paper for use in computer printers. McGregor was one of two private suppliers of 0996 for the government and has provided it with 0996 paper for approximately twenty years. *See* Administrative Record ("AR") at 114. McGregor asserts that the Committee's decision violates the requirements of the Committee's enabling statute, the Javits–Wagner–O'Day Act ("JWOD Act"), 41 U.S.C. §§ 46–48c, as well as the informal rulemaking provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. The JWOD Act, which amended an earlier Act, was passed in 1971 to promote employment for blind workers by bringing them into the economic mainstream of private industry.

Defendants are the Committee, its chairman, Ira L. Kemp, and the National Industries for the Blind ("NIB"). The Committee is a 15-member independent agency authorized under the JWOD Act to determine which items or services are "suitable" for the government to procure solely from workshops composed of blind or other severely handicapped individuals. Under the JWOD Act, the Committee is authorized to establish a "Procurement List" of such commodities and services, 41 U.S.C. § 47(a)(1), and to determine the "fair market price" at which the government should procure that commodity. 41 U.S.C. § 47(b). The JWOD Act also provides that the Committee may designate a non-profit agency or agencies to facilitate distribution of government orders. 41 U.S.C. § 47(c).

The NIB is a private, non-profit 501(c)(3) charitable purposes corporation that earns commissions by causing the Committee to transfer government business to tax-exempt organizations that it oversees. It is the central nonprofit agency designated by the Committee "to represent the workshops for the blind" in this process. 41 C.F.R. § 51–3.1(a). As such, the NIB is authorized to recommend fair market prices and suitable commodities for procurement to the Committee. 41 C.F.R. § 51–3.2.

In determining whether an item is "suitable" for placement on the Procurement List, the Committee is bound by several statutory and regulatory provisions. The Committee must consider whether a workshop is "capable of producing the commodity ... at a fair market price"; whether the addition to the Procurement List "would not have a serious adverse impact on the current or most recent contractor"; and

whether the workshop has the "capability to meet the Government's quality standards and delivery schedules." 41 C.F.R. § 51-2.6(a), (b).

In making additions or deletions to the list, the Committee must also comply with the informal rulemaking procedures established in subsections 553(b)—553(e) of the APA, 5 U.S.C. §§ 551–559, 701–706. *See* 41 U.S.C. § 47(a)(2). Committee regulations also require that the Committee publish notice in the *Federal Register* at least 30 days in advance of any addition or subtraction to the list, "announcing the proposed addition and providing interested persons an opportunity to submit written data, views, or arguments on the proposed addition." 41 C.F.R. § 51-2.6(c). The Committee is obligated to pay attention to "[a]ny substantive comments received as the result of the notice in the *Federal Register.*" 41 C.F.R. § 51-2.7(d).

In the case at hand, the Committee considered adding 0996 tabulating paper to the Procurement List pursuant to a memo by the NIB on May 21, 1991, recommending such an addition. In determining that the item was suitable for inclusion on the Procurement List, the Committee had before it the NIB's request which included estimations of the numbers of jobs that would be created for blind workers, a proposed calculation of the "fair market price," and the finding that six workshops would be interested in and capable of producing the government's needs. *See* AR at 4—15.

On May 24, 1991, the Committee published a Notice of Proposed Rulemaking in the *Federal Register,* requesting that comments be filed by June 24, 1991 in response to the proposed addition to the Procurement List. *See* 56 Fed.Reg. 23,875 (1991); AR at 51—52. McGregor, apparently, did not become aware of the notice until June 21, 1991, and requested a thirty-day extension for comment on that date. *See* AR at 106. The Committee extended the deadline for McGregor's comments to July 5, 1991.

Upon receipt of the NIB's request, Committee staff independently investigated the NIB findings. The Committee determined that the NIB's calculation of the fair mar-

ket price was accurate. *See* AR at 217–20. Committee staff also requested that General Services Administration (GSA) engineers assess the workshops' capability to produce 0996.

Comments were filed by McGregor and International Business Forms Industry, Inc. ("IBFI"), a trade association representing forms manufacturers, objecting to the proposed addition of 0996. *See* AR at 109–27. In an affidavit, McGregor's vice-president submitted that blind workers did not have the capacity to operate the machinery required to produce 0996 and that 0996 could not be produced by these workshops at the fair market price established by the Committee. *See* AR at 125–126. As for "adverse impact," McGregor stated that "it would be significantly affected by the loss of sales" of 0996, and that removal of 0996 would "destroy the distribution system in the forms industry." AR at 113, 115. These comments were largely conclusory and without factual support.

The executive director of the Committee submitted the full text of these comments to the Committee members, along with a "vote package." That package included the staff summary of relevant data and the conclusion that the workshops were capable of producing 0996. *See* AR at 139. The summary also included impact data, estimating that McGregor's contract with the government accounted for 2.7% of McGregor's sales for the year. *See* AR at 140. The Committee members, after considering this package, unanimously approved the addition of 0996 to the Procurement List, as recommended by the NIB.

On August 16, 1991, the Committee published its final notice in the *Federal Register.* *See* 56 Fed.Reg. 40,873 (1991); AR at 151—152. The final rule noted that the Committee had received two comments and that:

> The Committee has taken the contractor's record as a Government supplier of this item into account in reaching its conclusion that the addition does not constitute a serious adverse impact on current contractors. As the contract for this item represents only a small portion of the contractor's total sales, the con-

tractor cannot be said to be dependent on sales of this item to the Government even if it has been a long-time supplier of this item.

\* \* \* \* \* \*

The Government market for this item is only a small part of the total market. The Committee does not consider addition of the Government market for this paper to the Procurement List to constitute serious adverse impact on the forms industry.

56 Fed.Reg. 40,874.

McGregor proceeded to file a petition for reconsideration of the final rule on November 27, 1991. In its petition, McGregor objected to the lack of any record supporting a finding of capability, of the required percentage of blind labor, or of ability to produce at a fair market price. *See* AR at 158–159. McGregor also alleged that the Committee had "improperly delegated its function of assessing capability to NIB, which it cannot lawfully do." AR at 159. The Committee members voted to deny McGregor's petition for reconsideration on the basis that the request did not provide the Committee with any new information that would have resulted in a different outcome. *See* AR at 192.

On December 19, 1991, McGregor filed its Complaint for Declaratory and Injunctive Relief against the Committee, its Chairman Ira L. Kemp, and the NIB. On January 29, 1992, McGregor petitioned the Court for a preliminary injunction of the enforcement of the Committee's decision pending resolution of the cross-motions for summary judgment filed by McGregor and the three named defendants. The Court held a hearing on both sets of motions on April 2, 1992, and granted McGregor's motion for temporary injunctive relief. The motions for summary judgment are now taken up by this Court.

## II. *Legal Claims*

In its motion for summary judgment, plaintiff McGregor seeks to vacate the Final Rule to add 0996 to the Procurement List on the grounds that the Committee, its chairman, and the NIB acted arbitrarily and capriciously in their actions to place 0996 on that list. McGregor's claims are of three general types: 1) that defendants failed to follow proper procedure for informal rulemaking (First Count); 2) that the Final Rule to add 0996 to the Procurement List was not grounded on relevant fact (Second through Fourth Counts); and 3) that the Committee exceeded its statutory authority under the JWOD Act in placing 0996 on the Procurement List (Fifth and Sixth Counts). Defendants then filed motions for summary judgment, asserting that they have complied with the procedural requirements of the Administrative Procedure Act and have acted within their statutory scope of authority.

In reviewing the cross motions, we may accord summary judgment only when there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In a case where the parties have primarily relied on the administrative record, such as the one before us [1], there is no remaining issue of material fact and summary judgment on the legal claims is especially appropriate. *See, e.g., Langston v. Johnson,* 478 F.2d 915, 918 n. 17 (D.C.Cir.1973) (unless administrative record is contradicted, reliance on the record satisfies initial burden of demonstrating absence of genuine issue of material fact).

---

1. Both plaintiff and defendants have attempted to supplement the administrative record with affidavits. Plaintiff introduced an affidavit of William J. Crane, McGregor's Director of Manufacturing, in order to elaborate on the harm resulting to McGregor. Defendants have added two declarations filed as exhibits to the February 11, 1992 Committee Opposition to Plaintiff's Motion for A Preliminary Injunction by Beverly L. Milkman, the Committee's Executive Director, and Harold G. Fischer, Associate Director of Facility Operations.

Because these affidavits were not made a part of the administrative record, they are not to be considered by this Court on appeal from the administrative decision. *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1972) ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

## A. Procedural Claims

■ McGregor first asserts that the Committee's final rule adding 0996 to the Procurement List was invalid due to a number of procedural defects in the decision-making process. Specifically, McGregor implies that the Committee ignored the requirements for informal rulemaking under the APA, 5 U.S.C. § 553(b)—(c), that it receive adequate notice of the proposed rulemaking, an opportunity to comment on the proposal, and a concise general statement of the basis and purpose of the final rule. We find all of these contentions to be without merit and that defendants have acted within the scope of the Administrative Procedure Act and the relevant regulations.

With regard to notice, McGregor implies that it only had a ten-day period to prepare comments and that it should have been notified of the proposed rulemaking in October 1990, when NIB first intended to "monopolize 0996." *See* Pl.Mem.Supp. Summ.J. at 27. These contentions are blatantly fallacious. The record clearly shows that the Committee issued its notice for proposed rulemaking on May 24, 1991, 30 days in advance of the rule's effective date, as required by the APA, 5 U.S.C. § 553(d), and the Committee's own regulations. 41 C.F.R. § 51–2.6(c). The shortened response time was due to McGregor's own failure to see the notice until 10 days before the deadline. Moreover, there is absolutely no requirement that the Committee should have notified interested parties prior to May 24, 1991.

McGregor also contends that the opportunity for comment was thwarted by the paucity of information made available by the Committee in its notice, so that "no commenter could assemble the ammunition to make adequate comments on the impact of the transfer of 0996 to the non-profit organizations." Pl.Mem.Supp.Summ.J. at 28. Notice of proposed rulemaking, however, does not require that an agency share full information with interested parties, but that the notice identify "either the terms or substance of the proposed rule or a description of the subjects and issues involved," APA, 5 U.S.C. § 553(b)(3), and give interested persons the "opportunity to participate in rulemaking." APA, 5 U.S.C. § 553(c). We find that the terms of the notice adequately identified the issue by informing the public that the Committee had received a proposal to place 0996 on the Procurement List and inviting comments by June 24, 1991. *See* 56 Fed.Reg. 23,875 (1991); AR at 51–52. McGregor's extensive comments on the economic repercussions of adding 0996 also indicate that McGregor was sufficiently apprised of the issues in question and given adequate opportunity to comment.

Finally, McGregor suggests that the final rule issued by the Committee was not a "concise general statement" of "basis and purpose" as required by the APA. 5 U.S.C. § 553(c). Complaint, First Count. Describing the rule as "four empty paragraphs," McGregor seems to suggest that the rule was inadequate since it did not fully explore every point raised in McGregor's comments. *See* Pl.Mem.Supp. Summ.J. at 26–27. We disagree.

What is required by the final rule is "not ... an exhaustive, detailed account of every aspect of the rulemaking proceedings," but an indication of "the major issues of policy that were raised in the proceedings and [an explanation of] why the agency decided to respond to these issues as it did...." *Independent U.S. Tanker Owners Comm. v. Dole,* 809 F.2d 847, 852 (D.C.Cir.1987), *cert. denied sub nom., Atlantic Richfield Co. v. Independent U.S. Tanker Owners Comm.,* 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987). In another similar challenge to the Committee concerning the addition of military medals to the Procurement List, the Fourth Circuit also noted that "[t]here is no obligation to make reference in the agency explanation 'to all the specific issues raised in comments.'" *HLI Lordship v. Comm. for Purchase From the Blind,* 791 F.2d 1136, 1140 (4th Cir.1986) (*"Lordship I"*).

We find that the Committee's final rule did, in fact, sufficiently address the critical issues raised by McGregor's comments. The Committee spent over ten paragraphs

discussing McGregor's concerns regarding the impact on the forms industry in general and the capability of the blind workshops to produce 0996. In four paragraphs, the Committee explained in some detail its reasons for ruling to the contrary on each of these issues, explaining that McGregor had failed to produce evidence that more than a small portion of its total annual sales would be affected and that the Committee, based on its expertise in the area, had found the workshops capable of producing 0996.[2] This ruling is by no means comparable to the one-sentence conclusory statement, found to be "cryptic and perfunctory" in *Lordship I,* 791 F.2d. at 1141.[3] Because this rule provides some explanation of the agency's decision, we cannot say that the Committee acted in an arbitrary and capricious manner.

## B. The Committee's Decision

The Second through Fourth Counts of McGregor's Complaint allege that the Committee's decision with respect to adding 0996 is arbitrary and capricious because the defendants failed to conduct a proper or sufficient analysis of the necessary issues, or give serious consideration to

McGregor's comments. *See* Pl.Mem.Supp. Summ.J. at 2.

■ In reviewing an agency's informal rulemaking, we may hold an agency's action unlawful only if we find the decision to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." APA, 5 U.S.C. § 706(2). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its own judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *see also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414–421, 91 S.Ct. 814, 822–826, 28 L.Ed.2d 136 (1971). Accordingly, "[w]e must 'consider whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment.'" *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866 (citing *Bowman Transp. Inc. v. Arkansas Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974)).

■ Furthermore, in reviewing an agency decision, a presumption of validity attaches to the agency action. The burden of

---

**2.** This section in the final rule stated:

> The Committee has taken the contractor's record as a Governmental supplier of this item into account in reaching its conclusion that the addition does not constitute a serious adverse impact on current contractors. As the contract for this item represents only a small portion of the contractor's total sales, the contractor cannot be said to be dependent on sales of this item to the Government even if it has been a long time supplier of this item. The Committee has also determined that the nonprofit agencies which will produce the item have the necessary industrial and financial capability, and that the item will be furnished to the Government at a fair market price.
>
> The nonprofit agencies for the blind and their central nonprofit agency have a long history of adapting industrial equipment and training blind workers to ensure safe and efficient operations. The Committee took this into account in finding the agencies capable of producing this item. Visual inspection is considered to be indirect labor which may be performed by sighted workers.
>
> The Government market for this item is only a small part of the total market. The

Committee does not consider addition of the Government market for this paper to the Procurement List to constitute serious adverse impact on the forms industry. As the contractor has not provided any information to support its claims concerning the price of other paper items, the Committee has not taken them into account in reaching its decision.

> After consideration of the material presented to it concerning capability of qualified nonprofit agencies to produce the commodity at fair market price and impact of the addition on the current or most recent contractors, the Committee has determined that the commodity listed below is suitable for procurement by the Federal Government under 41 U.S.C. 46–48(c) and 41 C.F.R. 51–2.6.

56 Fed.Reg. 40873 (1991); AR at 151–152.

**3.** In *Lordship I,* the Committee had issued a final rule consisting of the mere one sentence statement that:

> After consideration of the relevant matter presented, the Committee has determined that the commodities listed below are suitable for procurement by the Federal Government....

*Lordship I,* 791 F.2d at 1141.

proof is on the plaintiff to establish that such a presumption is invalid; the agency does not have to prove on its record that it has acted properly, as McGregor suggests. *See, e.g., Michigan Citizens for an Indep. Press v. Attorney Gen.,* 695 F.Supp. 1216, 1219 (D.D.C.1988), *aff'd,* 868 F.2d 1285 (D.C.Cir.1989) ("plaintiff has the burden of proving that the [agency's] action fails under this standard."). With these guidelines, we address the specific defects alleged by plaintiff.

### 1. Adverse Impact

■ McGregor first alleges that the Committee's rulemaking was arbitrary and capricious because it did not adequately investigate or analyze the adverse impact on past or current contractors, as required under the JWOD Act. Complaint, Second Count. We find that McGregor has failed to demonstrate that the Committee acted unlawfully in this respect.

As mentioned above, the Committee's own regulations require that it find that the addition to the procurement list "would not have a serious adverse impact on the current or most recent contractor." 41 C.F.R. § 51–2.6(a)(1). Committee regulations further require that such a determination be based on a consideration of "the possible impact on the contractor's sales," "whether or not that contractor has been a continuous supplier to the Government ... and is, therefore more dependent on the income from such sales to the Government," and any comments the contractor submits. 41 C.F.R. § 51–2.6(d). We find that the Committee acted in accordance with these regulations in considering the impact of its decision on McGregor and that McGregor's claim is without merit.

First, McGregor suggests that the Committee did not sufficiently investigate the current and cumulative impact on McGregor's sales. McGregor states, for example, that the Committee members received no information regarding the potential impact of adding 0996 to the Procurement List.

*See* Pl.Mem.Supp.Summ.J. at 37. The record, however, shows the contrary to be true. When providing the Committee members with the "vote package," the Committee staff submitted a summary of the impact data and McGregor's comments concerning potential impact and its length of time as a government contractor. *See* AR at 140. The impact summary included *Dun and Bradstreet* reports concerning McGregor and the other contractor of 0996, a review of their government contracts for 0996, and a finding that such contracts accounted for 2.7% of McGregor's current sales. *Id.* It also included a calculation of the cumulative impact on McGregor of all items which had been added to the Procurement List in the prior three years, totaling 3.8%. *Id.*

Second, McGregor suggests that, even with these figures, the Committee staff should have inquired into the "true impact of the transfer" on McGregor's sales. Pl. Mem.Supp.Summ.J. at 38. The Committee is under no obligation under its regulations, however, to seek further information from McGregor. In a similar challenge to a prior Committee determination, this Circuit found that a review of GSA contracts, bid sheets, and *Dun and Bradstreet* reports provided an adequate investigation of impact and noted that "the Committee was not under any obligation to solicit information directly from Barrier." *Barrier Industries, Inc. v. Eckard,* 584 F.2d 1074, 1082–83 (D.C.Cir.1978). We agree with defendants that the onus was on McGregor to present other data in its comments which might have justified a different finding. *See, e.g.,* Def.Comm.Mem.Supp.Summ.J. at 38. McGregor, however, failed to do so, noting only generally in its comments that "it would be significantly affected by the loss of sales." AR at 113.[4]

We turn then to the ultimate question of whether the Committee acted unreasonably in concluding that there was no "serious adverse impact" on McGregor or the other current contractors, given the available im-

---

**4.** For the reasons stated in n. 1, *supra,* the information provided in the Crane affidavit is not considered in the Court's analysis.

pact data. We do not find unreasonable the Committee's conclusion that a 2.7% loss of sales is not "serious" enough to exclude 0996 from the Procurement List. In fact, in *Lordship I,* 615 F.Supp. 970, 975 (E.D.Va.1985), *rev'd on other grounds,* 791 F.2d 1136 (4th Cir.1986), the court upheld the agency's determination that a loss of business of nearly three times this amount (7.3%) "was not serious enough to warrant voting against the proposal." We therefore cannot say that the Committee acted arbitrarily and capriciously in its assessment of adverse impact.

### 2. Fair Market Price

■ McGregor, in its Third Count, alleges that the Committee failed to conduct an adequate fair market price analysis. McGregor's concerns appear to be two-fold: first, that the Committee failed to explain the basis for arriving at its fair price determination; and second, that the Committee did not independently investigate NIB's findings that the workshops could produce 0996 at that price. *See* Pl.Mem.Supp. Summ.J. at 36–37.

McGregor's first concern is that the recommended price of $13.02 per box of 0996 is a product of "mathematical calculations" and that "there is no indication how that number was derived." *See* Pl.Mem.Supp. Summ.J. at 10. We do not find, however, that the Committee is under any obligation to explain the basis of that determination or to accept public comment in its analysis.

■ As noted, Committee regulations require that the Committee consider whether a workshop is "capable of producing the commodity ... at a fair market price." 41 C.F.R. § 51–2.6(a)(1). That determination seems to be delegated to the Committee alone since the JWOD Act states that *"[t]he Committee* shall determine the fair market price of commodities and services...." 41 U.S.C. § 47(b) (emphasis added). We find, moreover, that the JWOD Act's requirement of notice and comment applies only to section 47(a) (the final determination of adding an item to the procurement list) and not to section 47(b) (the determination of fair market price). Fur-

thermore, since the Committee uses a publicly available mathematical averaging formula based on the average price of previous bids in arriving at such a determination, we cannot conclude that its determination of $13.02 was arbitrary. *See* AR at 221–227.

McGregor also appears to believe that the Committee must independently investigate whether the workshops are actually able to produce 0996 at the fair market price, rather than relying on the NIB's findings on this matter. *See* Pl.Mem.Supp. Summ.J. at 37.

The relevant regulation seems unclear on this point, stating that the Committee must find that the "qualified workshop [is] capable of producing the commodity or providing the service at a fair market price.". 41 C.F.R. § 51–2.6(a)(1). According to the Committee, this regulation requires an assessment of capability to manufacture the commodity, but does not require that the Committee double check the workshops' and NIB's assurances that the workshops can produce the item at the pre-set fair market price. *See, e.g.,* Def. Comm.Mem.Supp.Summ.J. at 31. "Neither the Act nor the Committee's regulations imply that the Committee is to serve, or is expected to serve, as business manager or investment adviser to the various nonprofit agencies in the JWOD program." *Id.,* n. 26.

We must defer to the Committee's interpretation on this point, since the JWOD Act does not speak to this issue and the Committee's interpretation is a plausible one. Where a statute is silent on the subject, a "court is obliged to give controlling weight to an agency's interpretation of its own regulation unless it is plainly erroneous or inconsistent with the regulation." *Trans-Canada PipeLines, Ltd. v. F.E.R.C.,* 878 F.2d 401, 411 (D.C.Cir.1989). "Deference is particularly required when the agency construction rests on matters peculiarly within the agency's field of expertise." *Id.; see also Stuart–James Co., Inc. v. SEC,* 857 F.2d 796, 800 (D.C.Cir.1988), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1002 (1989). Accordingly, we find that the

Committee was under no obligation to conduct the independent cost assessment which McGregor desired.

### 3. Capability

■ McGregor finally contends that the Committee acted arbitrarily and capriciously in determining that the workshops were "capable" of producing 0996 using 75% blind labor. Complaint, Fourth Count. McGregor alleges that "no facts of record support the capability [determination]" and that "McGregor's sworn evidence casts serious doubt on their ability." Pl.Mem.Supp. Summ.J. at 3.

We find, first of all, that the Committee's initial finding of capability was not unreasonable, given the information which it received. In its initial proposal to the Committee, the NIB included capability findings based on on-site inspections. *See* AR at 4–15. The Committee then requested a second evaluation by GSA quality engineers. That study found the workshops capable, provided that the start-up date was delayed to June 1, 1992. *See* AR 64–97.

McGregor asserts, however, that its comments should have made the Committee question its finding of capability. McGregor's comments described the difficulties and dangers of operating the machinery, leading McGregor to conclude that "[p]roduction of this item requires a worker to be alert and in control of all his faculties at all times." AR at 118.

The Committee acknowledged McGregor's concerns, but dismissed them on the basis that the workshops provided supervision by sighted persons and that the agencies took precautions with the machinery to ensure the workers' safety.[5] Since the finding of capability within blind workshops is within the Committee and NIB's area of expertise, and not within this Court's or McGregor's field of knowledge,

we cannot hold such a determination to be unreasonable.

McGregor's complaint regarding capability also concerns the percentage of blind labor employed. McGregor suggests that the JWOD Act requires that 0996 itself be produced by "75% of blind labor." We believe this is an incorrect interpretation of the Act. A "qualified nonprofit agency for the blind" is one which employs blind individuals for not less than 75% of the man-hours "in the production of commodities and the provision of services." 41 C.F.R. § 51–1.2(h). The regulation clearly requires 75% blind labor for the production of all commodities produced, not per product. *See also Barrier Industries*, 584 F.2d at 1081 (approving Center where "total man-hours of direct labor performed at the Center" exceeded 75 percent). In any case, the Committee has shown that the workshops are qualified, estimating that blind labor would constitute 99% of the workforce producing 0996. *See* AR at 139.

### C. Statutory Claims

■ McGregor's Fifth and Sixth Counts raise the argument that the Committee exceeded its statutory authority under the JWOD Act.

In its Fifth Count, McGregor states that the Committee violated the Act by acting "as an instrument of the NIB." Complaint, Fifth Count. As in its other arguments, McGregor suggests that no serious evaluation occurred in considering the addition of 0996, and that the Committee rubber-stamped the NIB's proposal.

We do not agree that the Committee yielded its authority to the NIB. Certainly, the NIB played a central role in providing initial information to the Committee. Such a role is authorized by Committee regulations, which permit the NIB to "recommend to the Committee, with appropriate justification including recommended prices,

---

**5.** In its vote letter to Committee members, the staff noted that McGregor's President "lacks knowledge of the types of accommodations made by nonprofit agencies employing blind persons to permit totally blind workers to perform a wide variety of functions, including those identified in his analysis." AR 179.

The final rule also indirectly rejected McGregor's concerns regarding lack of capability, noting that the Committee took into account the central agencies' expertise in adapting equipment for blind labor and training blind workers to ensure their safety. *See* n. 2 *supra.*

suitable commodities or services for procurement from its workshops." 41 C.F.R. § 51–3.2. The Committee, however, relied on other sources of information, as well, in making its determination. These sources included McGregor's own comments, the comments of IBFI, and the GSA investigation reports. Given this, we do not find that the Committee failed to conduct any independent information-gathering or analysis.

McGregor also contends that the Committee exceeded its statutory authority by granting a "monopoly" to a workshop which had not previously produced the product. Specifically, McGregor argues that the JWOD Act was never intended to allow the Committee to add items to the Procurement List which were not already manufactured by the workshops. *See* Pl. Mem.Supp.Summ.J. at 6. Plaintiff argues that the provision in the JWOD Act, which authorizes the Committee to establish a procurement list of "commodities produced by" qualified nonprofit agencies, means that the workshops must already be producing those products. 41 U.S.C. § 47(a)(1).

This statutory provision has already been construed in this Circuit. The court in *Barrier Industries*, 584 F.2d at 1080, in considering the legislative history of the JWOD Act, favored a contrary interpretation from that proposed by McGregor. The court concluded that "[n]othing in the Act or in its legislative history, or in any regulation, limits set-asides to workshops already manufacturing the commodity involved." *Id.* "[A]ll that is required is that a workshop demonstrate a *potential* to produce the particular commodity." (emphasis added). We therefore find McGregor's argument to be without merit.

### Conclusion

Nothing in the record leads us to believe that the Committee acted either arbitrarily or capriciously in adding 0996 to the Procurement List. For the reasons stated above, we therefore deny plaintiff's Motion for Summary Judgment and grant summary judgment to the defendants.