**McGREGOR PRINTING CORPORATION,**
Plaintiff,

v.

**Ira L. KEMP, et al., Defendants.**

**Civ. A. No. 91–3255.**

United States District Court, District of Columbia.

Jan. 27, 1993.

John P. Meade, O'Connor and Hannan, Washington, DC, for plaintiff.

Theodore C. Hirt, Jeffrey L. Darsie, Attorneys, Dept. of Justice, Jonathan Russin, Russin & Vecchi, Washington, DC, Paul M. Frank, Daniel J. O'Neill, Walter, Conston, Alexander & Green, P.C., New York City, for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

In this action, plaintiff McGregor Printing Corporation ("McGregor") has moved for a stay of this Court's Order of September 30, 1992, *McGregor Printing Corp. v. Kemp, et al.*, 802 F.Supp. 519 (D.D.C.1992), pending appeal of that decision. For the reasons given below, we deny plaintiff's motion.

### I. *Background*

On December 19, 1991, McGregor filed its Complaint for Declaratory and Injunctive Relief, challenging an informal rulemaking decision of the Committee for Purchase from the Blind and Other Severely Handicapped ("Committee"). Pursuant to the Javits–Wagner–O'Day Act ("JWOD Act"), 41 U.S.C. §§ 46–48c (1987 & Supp. 1992), the Committee is authorized to compile a "Procurement List" of certain commodities and services which the government should procure solely from workshops operated by blind and handicapped persons. 41 U.S.C. § 47(a)(1). In selecting these products, the Committee is advised by the National Industry for the Blind ("NIB"), a private, non-profit organization designated "to represent the workshops for the blind." 41 C.F.R. § 51–3.1(a) (1990).

In August 1991, the Committee decided to add to the "Procurement List" a type of tabulating machine paper, NSN 7530–00–800–0996 ("0996"). *See* 56 Fed.Reg. 40,873 (1991); Administrative Record ("AR") at 151–152. At the time of this rulemaking, McGregor was one of two private suppliers of 0996 for the government and had supplied the government with 0996 for twenty years. Following the publication of the Committee's final rule, McGregor petitioned for reconsideration of its ruling. *See* AR at 156–165. The Committee denied the petition. *See* AR at 192–197. McGregor then filed with this Court its Complaint for Declaratory and Injunctive Relief against the Committee, its Chairman Ira L. Kemp, and the NIB.

McGregor's basic claims in its Complaint were that the Committee had failed to follow the proper informal rulemaking proce-

dure required by the Administrative Procedure Act, 5 U.S.C. § 553(b)–(c) (1977); that the Committee had failed to ground its Final Rule on relevant fact; and that the Committee violated the JWOD Act by acting as an instrument of the NIB and adding items to the Procurement List already manufactured by private businesses. *See McGregor*, 802 F.Supp. 519, 523–528. Following the filing of its Complaint, McGregor also filed for a preliminary injunction of the enforcement of the Committee's ruling pending resolution of cross motions for summary judgment. Judge Revercomb granted temporary injunctive relief on April 2, 1992. *See McGregor Printing Corp. v. Ira L. Kemp, et al.*, No. 91–3255, 1992 WL 118794, at *7, 1992 U.S.Dist. LEXIS 6717, at *23 (D.D.C.1992). On September 30, 1992, this Court denied plaintiff's Motion for Summary Judgment and granted summary judgment for defendants, finding that the Committee's ruling had complied with the relevant administrative and statutory procedures. *See McGregor*, 802 F.Supp. at 529.

Plaintiff now seeks a stay of our September 30, 1992 Order pending its appeal of that decision.

## II. *Discussion*

■ In requesting a stay pending appeal, "it is the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Cuomo v. United States Nuclear Regulatory Comm.*, 772 F.2d 972, 978 (D.C.Cir.1985). In considering such a motion, the court must consider the following four factors:

(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Cuomo*, 772 F.2d at 974 (citing *Washington Metro. Area Transit Comm. v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir. 1977)).

■ Even where the moving party has not established a likelihood that it will prevail on the merits, a court may decide to stay enforcement of its ruling if it finds that plaintiff has presented a "serious legal question[ ]" and that the other three factors weigh heavily in plaintiff's favor. *Holiday Tours*, 559 F.2d at 844.

An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant.

*Id.* See also *Cuomo*, 772 F.2d at 974 ("A stay may be granted with either a high probability of success and some injury, or vice versa.").

■ We find that McGregor has failed, not only to establish the presence of serious legal questions, but also to demonstrate that the other three factors balance in favor of granting plaintiff's motion for a stay.

### A. Likelihood of Success on the Merits

In its Motion for a Stay, McGregor states that there are "important legal issues" existing. *See* Plaintiff's Memorandum of Points and Authorities in Support of Motion for Stay Pending Appeal ("Plaintiff's Mem.") at 7. These issues, however, are points which McGregor already raised in its Motion for Summary Judgment and which we rejected in the September 30, 1992 Order.

First, McGregor again asserts that this Court placed an improper burden of proof on the plaintiff by requiring that plaintiff demonstrate that the "presumption of validity" attaching to an administrative ruling is improper. *Id.* at 2. Second, McGregor restates its argument that the Committee could not reasonably have added 0996 to the Procurement List, given McGregor's comments regarding the "adverse impact" on the industry and the lack of "capability" by blind workshops to manufacture that

product.[1] *Id.* at 3. Third, McGregor reargues that the Committee's Final Rule contained an insufficient statement of basis and purpose, as required by the APA, 5 U.S.C. § 553(c). *Id.* at 5. Fourth, McGregor again contends that the Committee exceeded its statutory authority under the JWOD Act by selecting a product for the Procurement List which is already manufactured by private businesses. *Id.* at 8. Finally, McGregor again takes issue with the definitions of "adverse impact" and "capability," which this Court adopted in the September 30, 1992 Order. *Id.* at 6–7.

Because each of these points were fully addressed in that prior Order, *see McGregor,* 802 F.Supp. at 524–529, there is no reason to take up plaintiff's arguments once again. Moreover, because we have already found that the Committee clearly acted within its legal parameters, we fail to see that reasserting these arguments raises any serious legal questions.

### B. Irreparable Injury

While the absence of any serious legal question is, on its own, sufficient to deny a motion for a stay, we also note that McGregor has failed to provide sufficient evidence that the equities balance in its favor.

■ To begin with, McGregor has failed to show with sufficient certainty that it will suffer irreparable injury if the stay is denied. For an injury to be irreparable, "the injury [to the movant] must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. F.E.R.C.,* 758 F.2d 669, 674 (D.C.Cir.1985). Moreover, "mere economic injur[y]" does not, in and of itself, constitute irreparable harm. *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958).

McGregor's projections of injury appear, first, to be highly speculative. If the stay were denied, McGregor has alleged that it would be forced to fire nine workers located at three different production plants

within the next sixty days. *See* Plaintiff's Mem. at 9. This conclusion, however, is based on the assumption that the bidding process would revert to an annual basis on March 1, 1993, keeping McGregor "off the market for two to three years." *Id.* In fact, it is far more probable that the government would revert to short-term contracts of several months, as it did following the September 30, 1992 Order. McGregor would therefore be "off the market" from March 1, 1993 to the date on which its appeal is decided. Since McGregor appears to be preparing for an expedited appeal, *see* Reply of Plaintiff to Opposition of National Industries for the Blind ("Reply to NIB") at 11, this time period may be far shorter than two to three years.

■ Moreover, for an injury to be "certain," plaintiff must establish that the injury would not have resulted but for the denial of the stay. *See Wisconsin Gas,* 758 F.2d at 674. As defendants point out, however, there is no guarantee that McGregor would otherwise obtain government contracts if the stay were granted. *See* Opposition of National Industries for the Blind to Motion of Plaintiff ("NIB's Opposition") at 25. For example, for the first interim period, running from February 1, 1992 through May 31, 1992, McGregor was outbid in three of the five contracts awarded. *Id.; see also* Exhibit A to Opposition of Defendants Kemp and Committee to Plaintiff's Motion ("Committee's Opposition"). Similarly, for the second interim period, from September 1, 1992 through February 28, 1993, McGregor obtained only one contract. *Id.* Since McGregor cannot guarantee that it would continue to receive government contracts, its allegation of harm is speculative.

■ McGregor's claim also fails because McGregor has failed to show that its injury constitutes more than mere economic harm. If the stay were denied, McGregor could not compete for an interim contract and

---

1. An addition to the Procurement List may only be made if the Committee has determined that the workshop is "capable of producing the commodity ... at a fair market price"; that the addition "would not have a serious adverse im-

pact on the current or most recent contractor"; and that the workshop has the "capability to meet the Government's quality standards and delivery schedule." 41 C.F.R. § 51–2.6(a), (b) (1990).

might suffer losses in profits as a result. This type of injury, however, has not been considered sufficient to warrant injunctive relief. "Temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974).

■ McGregor has a legitimate argument that these economic losses are irreparable because it cannot recoup any of the losses it may suffer, even if it successfully appeals the September 30, 1992 Order. However, even if a monetary loss is irreparable, it must "also be serious in terms of its effect on the plaintiff." *Gulf Oil Corp. v. Dept. of Energy*, 514 F.Supp. 1019, 1026 (D.D.C.1981). In the present case, McGregor has stated that its business derived from government contracts accounts for only 2.7% of its total business. *See McGregor*, 802 F.Supp. at 522. The loss of that business is not, in our opinion, significant enough to result in a serious effect on McGregor's business. *Compare, Holiday Tours*, 559 F.2d at 843 n. 3 (complete destruction of business, by contrast, constitutes "severe economic impact").

### C. Harm to Others

In balancing the harm to the moving party, the court must also consider the harm to the non-moving party and to third parties. *Virginia Petroleum Jobbers Ass'n*, 259 F.2d at 925. In contrast to the speculative injuries shown by McGregor, harm to the blind workshops prepared to manufacture 0996 would be significant.

No longer is the workshops' "stake in the forms industry ... prospective only," *McGregor Printing Corp.*, 1992 WL 118794 at *6, 1992 U.S.Dist. LEXIS 6717 at *19, since six workshops are now ready to begin processing 0996 on March 1, 1993, when the current interim contract expires.[2] The anticipated sales at these workshops are expected to account for a total of 24% of their sales. *See* Declaration of William D. Telford, Appendix to NIB's Opposition ("Telford Decl."), at 3. There are 67 blind workers scheduled to begin manufacturing 0996 at the workshops. *Id.* at 6. In preparation for start-up, the workshops have procured over $500,000 in raw materials, trained supervisors and production personnel, and trained the workers at an NIB Technical Center. *Id.* at 5, 11.

Were a stay to be issued, NIB has testified that the 67 workers could not be reabsorbed in other job placements at blind workshops[3], and the start-up costs in training and obtaining materials might not be recouped. *Id.* at 13, 15. Moreover, NIB has testified that, because of large expenditures and loan commitments accrued in purchasing over $4,000,000 in machinery, the workshops are dependent on incoming revenues to offset their debt. *Id.* at 15. The harm to the workshops is therefore far more significant than the impact on McGregor.

McGregor notes, however, that a denial of the stay would also cause irreparable injury to a third party, J.D. Sky, another supplier of 0996. J.D. Sky states that its sales of 0996 constituted 25% of its total sales in 1991 and 45% of its total sales in

---

2. In the decision granting McGregor's motion for a preliminary injunction, Judge Revercomb found that the balance of hardships tipped in McGregor's favor because the blind workshops had only a prospective stake in manufacturing 0996, while McGregor had been a long-term producer and supplier of the product. *Id.* At that point, the General Services Administration ("GSA") inspectors had not even determined that the workshops were capable of beginning production. *Id.* The respective stakes of the parties have obviously changed from the time of that ruling.

3. Three of the six workshops have already had to fire a total of 105 blind workers this year

because of a cutback in other orders from the government. *Id.* at 13.

The inability of the workshops to absorb the blind workers is in marked contrast to McGregor's apparent ability to absorb workers at its various facilities. As the Committee notes, McGregor had filed a motion for a preliminary injunction on the grounds that denial of an injunction would force the closing of its York, Alabama plant. *See* Committee's Opposition at 11. After the injunction was granted, McGregor proceeded to close that plant anyway and transferred its workers to its factories in Meridian, Mississippi and Atlanta, Georgia. *See* Affidavit of William J. Crane, Appendix to Plaintiff's Mem., at 2.

1992, and that 48 employees specifically manufacture that product. *See* Letter Petition to Committee, Attachment to Plaintiff's Mem., at 2. Neither J.D. Sky's affidavit, nor the letter petition which McGregor offers explains, however, what the effect of the denial of the stay itself would be on J.D. Sky's business. Because J.D. Sky did not submit comments at any point during the Committee's rulemaking process, and because J.D. Sky did not supply any of the government's requirements of 0996 during 1991, there is insufficient evidence that denial of a stay would necessarily threaten J.D. Sky's business.

D. Public Interest

Finally, we find that a stay would be contrary to the public interest. Presumably, the public would be best served in this context by maximizing employment opportunities overall. By sheer numbers, then, the stay should be denied because a greater number of persons would be employed at the workshops. There is the additional, and perhaps, more important factor that job opportunities are particularly rare for blind and handicapped persons. NIB attests that there is currently a 65% unemployment rate for blind workers. *See* Telford Decl. at 13. Since it is the purpose of the JWOD Act to redress that situation, it is in the public interest to give effect to the purposes of that Act when appropriate. Having found that the Committee complied with the requirements of that Act in selecting 0996 in our prior Order, it is now in the general interest to permit production of 0996 by blind workshops as soon as possible.

*Conclusion*

Since McGregor has failed to raise any serious legal question, and since the equities balance in defendants' favor, we therefore deny McGregor's Motion for a Stay Pending Appeal. An Order to this effect is granted this day.