**FIRST SAVINGS BANK, F.S.B., Plaintiff,**

v.

**FIRST BANK SYSTEM, INC. and First Bank, fsb, Defendants.**

**No. 95–4020–SAC.**

United States District Court, D. Kansas.

Oct. 23, 1995.

---

Thomas H. Van Hoozer, William A. Rudy, Robert D. Hovey, and John M. Collins, Hovey, Williams, Timmons & Collins, Kansas City, MO, for plaintiff.

Brett C. Coonrod, Edward W. Mullen, Thomas M. Deacy, Deacy & Deacy, Kansas

City, MO, Peter Lancaster, Dorsey & Whitney, Minneapolis, MN, Stephen R. Baird, Dorsey & Whitney, Minneapolis, MN, and Ronald J. Brown, Minneapolis, MN, for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the plaintiff's motion to restore injunction during pendency of appeal pursuant to Rule 62(c) of the Federal Rules of Civil Procedure and Rule 8(a) of the Federal Rules of Appellate Procedure. (Dk. 207). The plaintiff brought this action under 15 U.S.C. § 1125(a) seeking to enjoin the defendants from using the names and marks of "First Bank(s)," "First Bank System," or "First Bank Kansas" for their banks servicing the Kansas counties of Douglas, Riley, Geary, Potawatomie and Marshall. On July 11, 1995, the court granted the defendants' motion for summary judgment. (Dk. 198). The plaintiff has appealed. (Dk. 203).

At the time it filed this suit on January 31, 1995, the plaintiff also requested a preliminary injunction. The court scheduled the preliminary injunction hearing for February 14, 1995. Agreeing that the proceedings for the preliminary injunction and trial should be consolidated with an expedited trial setting, the parties entered into a stipulation regarding the defendants' actions pending final judgment. (Dk. 10). The defendants agreed not to take the following actions in the five-county region:

1. Advertise any services available through any banks presently or formerly operating as Metropolitan Federal Banks, under the name "First Bank" or any confusingly similar name, through newspapers, magazines, television, radio, billboards, flyers, or any other broadcast or other media;

2. Use the name "First Bank" or any confusingly similar name in connection with exterior signage at any banks within those counties; or

3. Answer business telephones with the name "First Bank" or any confusingly similar name at any banks within those counties.

(Dk. 10 at 2). In the agreed scheduling order filed February 16, 1995, the court adopted the above stipulation and agreement and ordered the defendants not to take the actions set forth above. (Dk. 11 at 3). Upon the entry of final judgment, the defendants were relieved from the terms of the stipulation and order. The plaintiff now wants the court to revive the agreed injunction for the pendency of its appeal.

Rule 62(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Stay of an injunction should first be sought at the district court level. Fed.R.App.P. 8(a).

An application under Rule 62(c) is committed to the court's discretion informed by the balancing of certain factors. 11 Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 2904 at 501 (1995). The considerations on a motion for stay pending appeal are similar to those evaluated in deciding whether to grant a preliminary injunction. *Schwartz v. Dolan*, 159 F.R.D. 380, 383 (N.D.N.Y.1995). The factors for consideration are: (1) the likelihood that the plaintiff will succeed or prevail on appeal; (2) the threat of irreparable harm to the plaintiff absent a stay; (3) the harm to the defendants from the issuance of the stay; and (4) the harm to the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); *Securities Investor Protection Corp. v. Blinder, Robinson & Co. Inc.*, 962 F.2d 960, 968 (10th Cir.1992); *Thiry v. Carlson*, 891 F.Supp. 563, 565 (D.Kan.1995).

The movant bears the burden of proving these four factors. *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992); *Securities Investor Protection*, 962

F.2d at 968; *see Coastal Corp. v. Texas Eastern Corp.*, 703 F.Supp. 36, 37 (S.D.Tex. 1989) ("the burden of production and persuasion" is with the movant). " '[I]t is the movant's obligation to justify the court's exercise of such an extraordinary remedy.'" *McGregor Printing Corp. v. Kemp*, 811 F.Supp. 10, 12 (D.D.C.1993) (quoting *Cuomo v. United States Nuclear Regulatory Com'n*, 772 F.2d 972, 978 (D.C.Cir.1985)), *rev'd on other grounds*, 20 F.3d 1188 (D.C.Cir.1994); 11 *Federal Practice and Procedure*, § 2904 at 503–05 ("Because the burden of meeting this standard is a heavy one, more commonly stay requests will not meet this standard and will be denied.") "[T]he movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *Michigan Coalition v. Griepentrog*, 945 F.2d 150, 154 (6th Cir.1991) (citation omitted).

 The balancing of these four factors is plainly a case-by-case task that does not submit to any rigid set of rules. *Hilton*, 481 U.S. at 777, 107 S.Ct. at 2119–20. The factors do not function as "prerequisites" but as "interrelated considerations that must be balanced together." *Michigan Coalition v. Griepentrog*, 945 F.2d at 153. The weight accorded each factor is not necessarily the same, *Standard Havens Products v. Gencor Industries*, 897 F.2d 511, 512 (Fed.Cir.1990), and no one factor is determinative, *Constructors Ass'n of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3rd Cir.1978); *Republic Industries v. Central Pennsylvania Teamsters*, 537 F.Supp. 1036, 1036 (E.D.Pa. 1982).

 The balance depends on the relative strength of certain factors. To obtain a stay, the movant need not always show a strong likelihood or high probability of success on the merits. *Michigan Coalition*, 945 F.2d at 153; *Thiry*, 891 F.Supp. at 566. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury" that the movant will suffer absent a stay. *Michigan Coalition*, 945 F.2d at 153. If the other "equitable factors strongly favor interim relief, the court 'is not required to find that ultimate success by the movant is a mathematical probability' and 'may grant a stay even though its own approach may be contrary to movant's view of the merits.'" *Thiry*, 891 F.Supp. at 566 (citations omitted); *see Hilton*, 481 U.S. at 778, 107 S.Ct. at 2120 (a stay is permissible when a substantial case on the merits exists and the other factors support the stay); *Standard Havens Products v. Gencor Industries*, 897 F.2d at 512–13; *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981). When the other three factors strongly support the interim relief, the court may grant the stay if the movant presents a substantial case on the merits. *Hilton*, 481 U.S. at 778, 107 S.Ct. at 2120; *Ruiz*, 650 F.2d at 565; *McGregor Printing Corp. v. Kemp*, 811 F.Supp. at 12 ("serious legal questions").

### Irreparable Injury

 An injury is irreparable if compensatory damages are unsuitable. *Wildmon v. Berwick Universal Pictures*, 983 F.2d at 24; *see McGregor Printing Corp.*, 811 F.Supp. at 13 (" '[M]ere economic injur[y]' does not, in and of itself, constitute irreparable harm." (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958))). The movant must demonstrate that the injury is " 'both certain and great.'" *Cuomo*, 772 F.2d at 976 (quoting *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C.Cir. 1985)). The court evaluates the alleged harm assessing the substantiality of the claimed injury, the likelihood of its occurrence, and the sufficiency of the proof. *Michigan Coalition*, 945 F.2d at 154.

 The court does not believe the plaintiff's evidence demonstrates irreparable harm. From the reported consumer calls and inquiries, one can infer that some level of actual confusion has existed. The court, however, cannot determine from what has been presented whether that confusion is long-term, significant, unmanageable, or particularly harmful to the plaintiff. The plaintiff's evidence of actual confusion is comprised of a noticeable number of instances where customers of Metropolitan Federal Bank confused after reading the announcement of their bank's merger called the plaintiff about that change. This confusion proba-

bly was exacerbated by the delay in the Metropolitan Federal's conversion which was caused by this litigation. It seems reasonable to expect that the extent of any such initial confusion will dissipate with First Bank Kansas completing its conversion and establishing its own name recognition.

There is nothing of record from which one could reasonably infer that the defendants have the intent to derive benefit from the reputation or goodwill of the plaintiff. From the evidence offered by the defendants, it appears that the plaintiff's reputation in the banking community is not something that the defendant would want. The defendants appear as motivated as the plaintiff, if not more so, to have their institution stand on its own reputation and goodwill.

"First" is a common element in bank names. By elevating this common element to singular importance in its mark, the plaintiff accepted the risks and the uncertainties that come from doing so. The defendants have evidence of actual consumer confusion existing between the plaintiff and the First National Bank of Salina and the First National Bank of Wamego. Given this background level of confusion, the plaintiff cannot meet its burden of proving a likelihood of confusion without evidence that there has been or will be levels of confusion significantly greater than the background levels.

Banking transactions are marked by an attention to detail and approached by consumers with that care and concern reserved for matters directly bearing on their financial welfare. Given this typical degree of consumer care, the court agrees there is a substantial basis for believing the defendants' continued use of the prominent modifier "Kansas" should minimize the likelihood of any significant consumer confusion. In short, the court cannot conclude from the plaintiff's evidence and arguments that the possible confusion will be of the nature, degree or duration that would necessarily harm or diminish the plaintiff's name recognition and good will. Finally, the plaintiff does not establish that without the injunction it would

be unable to prevent the harm that would flow from this possible confusion. This factor does not militate in favor of a stay.

### Harm to the Defendants

The plaintiff argues the defendants are not in a position to claim any substantial harm. If there was any harm, the defendants would not have stipulated to the initial injunction. Because the defendants rushed to complete the exterior signage after the entry of final judgment, the plaintiff maintains the defendants can remove the signage as easily.

Since the entry of final judgment on July 11, 1995, the defendants have erected the exterior signage on their branches in Lawrence and started using their name First Bank Kansas.[1] The defendants were entitled to rely on that judgment and to proceed with converting to First Bank Kansas. Obviously, the defendants had planned for the conversion for these two branch banks, along with all of its other branch banks, well before this litigation was commenced. The defendants simply implemented those existing plans in a timely fashion. The plaintiff does not show that it did anything for nearly three weeks to warn the defendants about proceeding with the planned name conversion. The plaintiff waited even longer to seek a stay. The plaintiff cannot now complain that the defendants exploited the situation, for it was the plaintiff that gave the defendants the window of opportunity.

The court believes the defendants face substantial harm if forced for the second time to revert back to its former name after publicizing a name change. This event could cause not only confusion and frustration to the defendant's customers, but it also could raise concerns about the defendant's stability and, thus, its ability to serve the continuing needs of its customers. The defendant would be prevented from continuing the development of its identify as one of the branches in the larger First Bank System. Along that same line, the defendant would be forced to customize its advertising and some of its

---

**1.** Because of these changes, an injunction now would alter rather than preserve the status quo. The movant's burden is particularly heavy when the injunction would not preserve the status quo, but change it. *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1099 (10th Cir.1991).

banking procedures for its Manhattan and Lawrence branches. This factor does not favor an injunction.

### Public Interest

The court is not sure that the level of consumer confusion would be less with or without a stay. With a stay and another name change, the defendants' customers will be confused over their bank's status, and the public could be confused over the defendants' stability. Without a stay, there will be some level of confusion caused by the similarity of names that may subside as the defendants work at developing name recognition. This factor does not strongly favor the plaintiff.

### Likelihood of Success on the Merits

Based on the balance of equities, the plaintiff must do more than show that it has a substantial case on the merits. Indeed, the plaintiff must show a strong likelihood or high probability of success on the merits. The court believes that the summary judgment order speaks for itself and that the plaintiff faces a difficult hurdle in overcoming the constructive notice provided by the defendants' federal registration. Were the court of appeals to reverse the summary judgment order, the plaintiff faces another difficult burden at trial in proving a substantial likelihood of confusion. On the issues as they have been presented, the court finds that the plaintiff has not shown a strong likelihood of prevailing on the merits.

IT IS THEREFORE ORDERED that the plaintiff's motion to restore injunction during pendency of appeal (Dk. 207) is denied.