**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**TEXAS EDUCATION AGENCY,**
**Defendant-Appellee,**

v.

**LUBBOCK INDEPENDENT SCHOOL DISTRICT, Defendant-Appellant.**

No. 85–1265.

United States Court of Appeals,
Fifth Circuit.

June 4, 1986.

Brian P. Quinn, D. Thomas Johnson, Lubbock, Tex., for defendant-appellant.

Renea Hicks, J. Patrick Wiseman, Austin, Tex., for Tex. Educ. Agency.

Frank D. Allen, Walter W. Barnett, Wm. Bradford Reynolds, Washington, D.C., for U.S.

Before THORNBERRY, POLITZ and RANDALL, Circuit Judges.

**OPINION**

RANDALL, Circuit Judge:

This case grows out of the Lubbock Independent School District's attempt to recoup from the State of Texas monies expended

in an effort to desegregate schools in the district. The district court denied the school district's motion to divide costs. We affirm.

### I.

The United States initiated this litigation when, in 1970, it sued the Texas Education Agency ("TEA") and six school districts in order to abolish vestiges of the dual school system in Texas. Following a limited appeal and this court's subsequent decision in *United States v. TEA*, 431 F.2d 1313 (5th Cir.1970), the various actions were severed, so that the only school district involved in the present litigation is the Lubbock Independent School District ("LISD").

The TEA filed an answer in response to the United States' complaint in the suit against it and the LISD, but the TEA was not heard from again until the LISD filed a motion to divide costs in 1984. During the intervening years, despite the active status of the case as well as the issuance of numerous court orders pertaining to relief (filed in 1972, 1973, 1977, 1978, and 1983), the TEA was not involved. It was simply not a participant in the suit or its ongoing proceedings.

After a trial concerning the United States' original complaint in 1970, the district court found that certain schools in the LISD were unconstitutionally segregated. The court in 1970 did not delineate the reasons why particular schools remained segregated. The court did observe, however, that Dunbar High School "was traditionally operated as a segregated black school under the laws of the State of Texas and the vestige of a dual system, in which [Dunbar] was segregated as black, remains to this day." Likewise, the court found that Struggs Junior High School "is a remainder and vestige of the dual operation in existence prior to 1954." However, Struggs did not open until 1965. Of the four elementary schools found to be unconstitutionally segregated (Wheatley, Ella Isles, Guadalupe, and Sanders), the court found that two were unconstitutionally segregated with respect to blacks, and the other two with respect to Hispanics. The State of Texas did not mandate even before 1954 that Hispanics be segregated; the LISD took this action on its own. And with respect to the black elementary schools—and the other unconstitutionally segregated black schools as well—the district court, while acknowledging that pre-1954 state law had, at one time, mandated separate schools, did not explain why the schools were still segregated in 1970, probably because the court was not called upon to do so.

Although the district court in 1970 did not specifically allocate or apportion the fault or the blame for the segregation in Lubbock between the LISD and the TEA, the court did order relief. That relief was directed solely at the LISD, not the TEA. Nevertheless, the LISD did not in 1970 file a motion for a division of costs, or anything similar. Neither party appealed from the order in 1970.

In 1977, the LISD sought permission from the district court to proceed with its building construction program. The United States opposed this request and also asked for supplemental desegregation relief, alleging that the LISD had continued to segregate blacks and Hispanics. The district court ordered further relief, *United States v. LISD*, 455 F.Supp. 1223 (N.D.Tex. 1978), *aff'd*, 601 F.2d 585 (5th Cir.1979). Following the issuance of subsequent orders by the district court, the United States, not satisfied with the extent of the relief granted, appealed. This court remanded the case to the district court for further factual findings. *United States v. TEA*, 600 F.2d 518, (5th Cir.1979). We instructed the district court to make specific inquiries in determining whether the segregation in certain schools which had once been integrated was a product of deliberate school board action. 600 F.2d at 529.

Following the remand, the district court entered further orders, from which both the United States and the LISD appealed. However, while the appeal was pending, the United States and the LISD agreed to settlement terms, so the appeals were vol-

untarily dismissed. The district court entered a consent decree and order on November 29, 1983. This order reflected settlement negotiations between the LISD and the United States; the TEA was not involved. In addition, the relief ordered by the decree was directed, again, exclusively at the LISD, not the TEA.

Finally, the LISD filed a motion to divide costs in August, 1984, asserting that segregation within the LISD had been caused, in part, by actions of the State of Texas. The motion alleged that costs incurred in implementing the desegregation remedies approached $9 million. The district court denied the motion, explaining that the TEA had never been adjudged liable for the segregative acts which entailed the LISD's monetary expenditures, and that the Eleventh Amendment barred the recovery sought by the LISD against the State.

## II.

The LISD argues that although it did segregate schools according to race, the responsibility for so doing was not its alone. The LISD acted in accordance with the laws of the State of Texas. *See* Tex. Const. art. 7 § 7 (Vernon 1955); Tex.Rev. Civ.Stat.Ann. art. 2900, 2900a (Vernon 1965). Accordingly, the LISD asked that the district court use its equitable powers to apportion the costs of remedying segregation among the various parties responsible for creating it.

In *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (*Milliken II*), the Supreme Court reviewed a court-ordered desegregation plan in which the district court directed that costs attributable to the plan be borne equally by the two groups of defendants responsible for prior constitutional violations: the Detroit School Board and the State of Michigan. 433 U.S. at 277, 97 S.Ct. at 2755. In affirming the remedy as well as the allocation of costs, the Court explained that the " 'condition' offending the Constitution is Detroit's de jure segregated school system, which was so pervasively and persistently segregated *that the District Court found that the*

*need for educational components flowed directly from constitutional violations by both state and local officials."* 433 U.S. at 283, 97 S.Ct. at 2758 (emphasis added).

The LISD argues that the district court in this case did find, in 1970, that the segregation in the Lubbock schools—i.e., the unconstitutional condition—resulted from actions of the State as well as the LISD. Thus, the appropriate remedy, as exemplified by *Milliken II,* would be to divide costs between the LISD and the State of Texas. In effect, the LISD insists that the State of Texas not be permitted to escape the consequences of its own unlawful action.

The LISD's reliance on *Milliken II* as authorizing a division of costs in this case is misplaced for several reasons. Unlike the district court's findings in *Milliken II,* the district court's original order in this case—the 1970 order upon which the LISD bases its entire argument—did not attribute responsibility for specific segregation to any particular defendant. The district court did state, and it can hardly be denied, that vestiges of state-mandated segregation still remained extant in Lubbock in 1970. However, the court did not indicate whether the actual segregation then evidence resulted primarily from earlier state laws or from subsequent LISD gerrymandering of attendance zones. Significantly, though, the relief ordered by the district court was directly solely at the LISD, not the State. Moreover, and rather important, the relief ordered in 1970 proved virtually costless to the LISD; the LISD's effort to recoup money pertains to funds expended after the entry of the 1977 order.

The 1977 order, however, seems to indicate unmistakably that the only culpable party was the LISD. The State of Texas was not an active party to the proceedings in 1977–78. The district court's memorandum opinion and order discusses only the segregative action of the LISD. The LISD gerrymandered school attendance zones and refused to take action which would have helped remedy that segregation which had been caused, in part, by pre-1954 state

law. *See* 3 Record at 472–509. The court ordered the LISD to prepare a plan which would ameliorate segregation, and the LISD prepared and submitted a plan without, insofar as the record reflects, any assistance from the State.

The opinion of this court which reviewed the remedy ordered by the district court in 1977–78 evidences a recognition that the district court attributed segregation exclusively to "School Board action." 600 F.2d at 521. Specifically, the district court found in 1977 that the LISD's actions relating to student assignment, the drawing of attendance zones, and its decisions concerning school construction perpetuated and reinforced existing segregation and led, in addition, to further segregation. *See* 600 F.2d at 522–24. Our opinion did not disturb these findings.

As the affidavits submitted by the LISD attest, the money expended for purposes of desegregation (which it now seeks to recover) grew out of the district court's 1977 and subsequent orders. *See* 7 Record at 1077 (itemizing expenses for 1977–78 through 1982–83, and estimating expenses for 1983–84). The LISD did not seek to recover any costs for the period between 1970 and 1977. Yet it was only during that period that the district court order even *arguably* pertained to the State of Texas; the 1977 and subsequent orders were explicitly directed at—and limited to—the LISD.

### III.

Finally, we pause to note the peculiar procedural posture of this case. The LISD certainly could have moved in 1977—or as early as 1970—for the district court to amend its judgment so as explicitly to adjudicate the State of Texas' fault. *See* Fed. R.Civ.P. 60(b). Further, the LISD could have moved in 1977, once it became clear what the effort to desegregate would cost, that the court divide these costs among the parties deemed responsible for the then-existing segregation. *Cf. Milliken II,* 433 U.S. at 283. But the LISD pursued neither of these alternatives, and we express no view of what their proper resolution might

have been. We are left instead with the LISD's belated effort to recover costs which smacks of an attempted end-run around the Texas legislature's allocation of state funds. Yet the State has not been an active party to this suit since 1970, and it has never been adjudicated responsible for that segregation in Lubbock which has proven costly to eliminate. Accordingly, the judgment of the district court is AFFIRMED.