PER CURIAM: *
In a longstanding pending desegregation case, the district court enjoined certain non-party state actors (Appellants here) from implementing a recently passed statute with respect to the defendant parish school board. The Appellants filed an emergency motion seeking to stay a portion of a preliminary injunction pending appeal. On December 14, 2012, we granted a temporary stay pending further order of this court. We note that this matter comes before us as a motions panel only on •the question of whether a stay pending appeal should be granted. The motion was filed as an emergency motion, with limited time for briefing and consideration. Under the posture of the case as presented to us, we are addressing only the question of whether the district court’s injunction order should be stayed pending consideration of all arguments raised by the parties — jurisdictional and otherwise — follow *391 ing full briefing and, if appropriate, oral argument. In assessing whether to grant a stay, we necessarily must examine the merits of the parties’ arguments. But, given the procedural posture of this case, we emphasize that we do not intend to bind the ultimate merits panel which will consider the matter following full appellate process. Additionally, we determine that a full exposition of the law in this area is unnecessary and inappropriate at this stage, so we will endeavor to be brief in our reasoning. For the reasons stated below, we now GRANT the Appellants’ motion and STAY the district court’s order pending appeal.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The desegregation plaintiffs and the Tangipahoa Parish School Board (“the Board”) (collectively, “the Petitioners”) filed motions for the issuance of writs pursuant to the All Writs Act, 28 U.S.C. § 1651(a), seeking injunctions against the further implementation of certain provisions of Acts 1 and 2 of the 2012 Regular Session of the Louisiana Legislature (“Act 1” and “Act 2”) based on their alleged interference with a court-ordered consent decree. The underlying consent decree arose from a 1965 federal desegregation suit, Moore v. Tangipahoa Parish School Board, in which the district court issued an order establishing certain student assignment and facilities requirements aimed at assisting the Board in achieving unitary school system status.
The most relevant portion of the newly enacted law is the Student Scholarships for Educational Excellence Act, LaRev. Stat. Ann. §§ 17:4011-:4025, implemented through Act 2. This Act creates a school-voucher or scholarship program (“the Program”) that allows students in Tangipahoa Parish (“the Parish”) to attend alternative public or private educational institutions in lieu of attending their assigned underper-forming public school in the Parish. See La.Rev.Stat. Ann. §§ 17:4018, :4018. When students elect to participate in the Program, Minimum Foundation Program (“MFP”) funds, which are state funds intended for public education, are diverted from the student’s assigned public school in the Parish to the alternative public or private institution where the student is educated. See id. § 17:4016. At present, fifty of the approximately 20,000 students in the Parish are participating in the Program. The Petitioners allege that compliance with the court-ordered consent decree requires them to receive full MFP funding and that the Program’s diversion of MFP funds frustrates their ability to implement the provisions of the decree.
On October 22, 2012, the district court ordered John White, Louisiana Superintendent of Education (“Superintendent White”), the Louisiana Department of Education (“the Department”), and the Louisiana Board of Elementary and Secondary Education (“BESE”) (collectively, “the State”), “to show cause ... as to why a preliminary injunction should not be entered ... enjoining and prohibiting ... further implementation of [the Program in the Parish].” The district court also ordered the State to show “why a mandatory preliminary injunction should not be entered ... directing [the State] to immediately commence full MFP funding to the [Board] for each student on a scholarship pursuant to the [Program].”
The State responded and during the November 26, 2012, hearing the district court issued a preliminary injunction.[1] As in- *392 strueted by the court, the Petitioners and the State submitted proposed orders consistent with the court’s oral reasons. On November 28, 2012, the district court entered the Petitioners’ proposed order thereby enjoining the Program in the Parish.
The next day, the court denied the State’s request for a stay of the preliminary injunction pending appeal. The State timely moved this court to stay a portion of the preliminary injunction. See Fed. R.Apr P. 8(a)(1)(C).
At the same time that the federal district court injunction process was ongoing, a lawsuit challenging the constitutionality of the Program was pending in a Louisiana state trial court. That case examines the validity of the Program under the Louisiana state constitution. See La. Fed’n of Teachers v. Louisiana, No. 612,733, slip op. at 2 (19th La. Dist. Nov. 30, 2012). The state trial court found that the Program violates the state constitution by diverting public funds from the state’s public schools to private entities. See id. This ruling may be directly appealed to the Louisiana Supreme Court and, as discussed below, could render this federal action moot.
II. STANDARD OF REVIEW
We review a district court’s denial of a stay pending appeal for abuse of discretion. See Wildmon v. Berwick Universal Pictures, 983 F.2d 21, 23 (5th Cir.1992); see also Beverly v. United States, 468 F.2d 732, 740 n. 13 (5th Cir.1972) (“[T]he accepted standard for review of such a stay is whether or not the trial court abused its sound discretion in denying the stay.”). The factors for evaluating the appropriateness of a stay pending appeal are well-established: “(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.” Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); see also Nken v. Holder, 556 U.S. 418, 426, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).
“The first two factors of the traditional standard are the most critical.” Nken, 556 U.S. at 434, 129 S.Ct. 1749. As the mov-ant for a stay pending appeal, the State carries the burden to satisfy the four factors, see Ruiz v. Estelle, 666 F.2d 854, 856 (5th Cir.1982), and it is not entitled to the stay as a matter of right. See Nken, 556 U.S. at 433, 129 S.Ct. 1749.
III. DISCUSSION
We conclude that the State has met its. burden of establishing that the district court abused its discretion in denying the stay of the preliminary injunction.[2]
A. Likelihood of Success on the Merits
The State must make “a- strong showing that [it] is likely to succeed on the *393 merits.” Hilton, 481 U.S. at 776,107 S.Ct. 2118. In assessing this standard,- “the movant need not always show a ‘probability’ of success on the merits.” Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir.1981) (citation omitted). “[I]nstead, the [State] need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.” Id.; see also Nken, 556 U.S. at 434,129 S.Ct. 1749 (noting that the movant must show “[m]ore than a mere possibility of relief’). The State has demonstrated that it is likely to succeed in establishing that the district court improperly issued the preliminary injunction based on several grounds including: (1) the district court’s lack of jurisdiction under the Eleventh Amendment; (2) the Pullman abstention doctrine; and (8) the lack of evidence establishing authority for the court to act pursuant to the All Writs Act.
1. Lack of Jurisdiction Based on Eleventh Amendment Immunity
The State has a strong likelihood of prevailing on its claim that the district court did not have jurisdiction to issue the preliminary injunction because its exercise of authority violated the State’s Eleventh Amendment sovereign immunity. Absent a waiver of immunity by a state or through a federal statute, the Eleventh Amendment protects states from suit in federal court regardless of whether the suit seeks-damages or injunctive relief. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); see also Quern v. Jordan, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (noting that this immunity guards a state from “a suit in federal court by private parties seeking to impose a liability which must be paid from public funds.”). “This bar remains in effect when State officials are sued for damages in their official capacity” because “a judgment against a public servant in his official capacity imposes liability on the entity that he represents.” Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (internal quotation marks and citations omitted); see also Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (“It is also well established that even though a State is not named a party to the áction, the suit may nonetheless be barred by the Eleventh Amendment.”).
The principle of state sovereign immunity also prohibits subdivisions of a state from seeking relief • against state defendants in federal court. Harris v. Angelina Cnty., Tex., 31 F.3d 331, 339 (5th Cir. 1994). Indeed, “we can think of few greater intrusions on state sovereignty than requiring a state to respond, in federal court, to a claim for contribution brought by one of its own [subdivisions].” Id. at 340 (citation omitted); see also Stanley v. Darlington Cnty. Sch. Disk, 84 F.3d 707, 716 (4th Cir.1996) (“It would be an unfathomable intrusion into a state’s affairs — and a violation of the most basic notions of federalism — for a federal court to determine the allocation of a state’s financial resources. The legislative debate over such allocation is uniquely an exercise of state sovereignty.”). In general, then, federal courts do not interfere in a state’s disputes with its own political subdivisions.
Here, Petitioners seek injunctive relief against two state agencies, the Department and BESE. Further, there is no claim that Superintendent White has violated federal law or acted outside of his official capacity, and the State is not a party to the consent decree. Accordingly, there is a significant likelihood that the State can show the preliminary injunction offends Eleventh Aníendmént immunity because an injunction against the Depart *394 ment, BESE, or Superintendent White is effectively an injunction against the State.
The Petitioners’ statements in their briefing to the district court reveal the true nature of their complaint. Specifically, the Board seeks to avoid “a reduction in MFP funding” because “[t]he school board is in need of funding now” and it “can ill afford to have the state reduce its share of MFP funding.” These statements show that the Board does not seek an injunction to prevent violations of federal law, but instead seeks such relief in order to prevent the implementation of the state legislature’s decisions concerning education funding, a quintessentially state issue. They also show that the essence of the relief sought is not injunctive but rather monetary — enjoining the State from “failing to pay” is little less than telling the State to pay.
In addition to requiring the State to address legislative decisions about state funding in federal court, the district court thus required the State to respond to what is essentially a contribution claim by one of its own subdivisions. Such disputes concerning the allocation of the state’s financial resources fall within the purview of a state’s sovereign power, and requiring a state to answer a claim for contribution— however disguised — from one of its own subdivisions violates its Eleventh Amendment immunity. See Harris, 31 F.3d at 340; see also Kelley v. Metro. Cnty. Bd. of Educ. of Nashville & Davidson Cnty., Tenn., 836 F.2d 986, 998 (6th Cir.1987) (federal courts should not “adjudicate an internal dispute [concerning funding for a desegregation order] between a local governmental entity and the very state that created it.”). Indeed, a school district cannot recover funds expended in compliance with a desegregation order when the state is not a party to the desegregation order. See United States v. Tex. Educ. Agency, 790 F.2d 1262, 1264-65 (5th Cir.1986). Such attempts to recover funding from a state ostensibly to comply with a desegregation order to which it is not a party “smacks of an attempted end-run around the [state] legislature’s allocation of state funds.” Id. at 1265.
The district court justified the issuance of the preliminary injunction — which essentially serves as an award of monetary relief against the State’s treasury — by noting that the Supreme Court “has curbed [the limitation proscribing an award of money damages] in the case of a federal court giving prospective injunctive relief against a state officer even though compliance with the injunction will cost the state money in the future.” A district court is not free to interfere in state spending decisions simply because raising and lowering funding levels may have some incidental impact on a federal decree. The injunction here is not aimed at preventing direct interference with a court-ordered consent decree, but instead bars state officials from implementing a state’s program and funding decisions because of their attenuated connection to a consent decree. Unlike the cases relied on by the district court, this matter does not involve a party seeking a state official’s compliance with federal law that will indirectly cost the state more money. See, e.g., Quern, 440 U.S. at 336, 349, 99 S.Ct. 1139 (federal court has jurisdiction to order state officials to send notification to class plaintiffs of the availability of an administrative remedy to recover public benefits); Edel-man, 415 U.S. at 668, 94 S.Ct. 1347 (finding a federal court cannot require the “payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination”). Furthermore the district court’s reliance on Milliken v. Bradley is misplaced because, unlike here, the state in Milliken was a party to the original *395 desegregation order and was found to be partially responsible for the segregation. 438 U.S. 267, 269, 289-90, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (finding that federal court has jurisdiction to allocate costs between state and local officials when ordering a school desegregation plan).
Put another way, the gravamen of Petitioners’ claims is an attempt to avoid decreases in education funding. Masking it as a concern about compliance with the district court’s desegregation order does not change the fundamental nature of the injunction as one directly affecting a state’s sovereign decision-making about state spending. This approach, then, conflicts with the State’s sovereign immunity by requiring it to answer what is essentially a claim for contribution from one of its subdivisions in federal court. Accordingly, the State has a strong likelihood of success in showing that the district court’s issuance of the preliminary injunction violated the State’s Eleventh Amendment sovereign immunity.[3]
2. Pullman Abstention
“[T]he Supreme Court [has] ‘instructed federal courts that the principles of equity, comity, and federalism in certain circumstances counsel abstention in deference to ongoing state proceedings.’ ” See Wight-man v. Tex. Supreme Court, 84 F.3d 188, 189 (5th Cir.1996) (quoting Fieger v. Thomas, 74 F.3d 740, 743 (6th Cir.1996)). Based on the application of this principle in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the State is likely to prevail in its claim that the district court should not have exercised jurisdiction in light of the pending state-court action challenging the validity of the Program under Louisiana’s constitution.[4]
A federal court should generally abstain from exercising jurisdiction in a matter when an unsettled area of state law has an effect on the outcome of a federal constitutional claim or would render a decision on the federal issue unnecessary. Pullman, 312 U.S. at 496, 61 S.Ct. 643; see, e.g., Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) (explaining that when the outcome of a case in state court could remove the need to decide a federal issue a federal court should stay the proceeding until the state court has rendered judgment). Although “abstention [i]s applicable only in narrowly limited special circumstances,” the doctrine should be applied when “[a] state court decision ... could conceivably avoid any decision [of the federal question] and *396 would avoid any possible irritant in the federal-state relationship.” Reetz v. Bozanich, 397 U.S. 82, 86-87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) (internal quotation marks and citation omitted); Word of Faith World Outreach Ctr. Church, Inc. v. Morales, 986 F.2d 962, 967 (5th Cir.1993) (citation omitted) (“Pullman abstention ... is addressed to the inappropriateness of federal court resolution of difficult or unsettled questions of state law and the undesirability of' reaching constitutional questions that might be mooted by the application of state law.”). This doctrine “[i]s based on ‘the avoidance of needless friction’ between federal pronouncements and state policies.” Reetz, 397 U.S. at 87, 90 S.Ct. 788 (quoting Pullman, 312 U.S. at 500, 61 S.Ct. 643).
This matter presents the very conflict that Pullman abstention seeks to avoid— 1.e., “ ‘needless friction’ between [a] federal pronouncement ] and state policies” — as it involves a federal court enjoining a state’s legislatively-determined funding decisions prior to allowing the state to consider whether such decisions comport with its own constitution. See id. The State thus has shown a strong likelihood of succeeding on the merits of its claim that Pullman abstention applies because the resolution of an unsettled area of state law — whether the Program’s transfer of public-education funds to non-public schools offends Louisiana’s state constitution — could obviate the need to consider the federal issue of whether the Program renders the Petitioners unable to comply with the court-ordered consent decree. See Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm., 283 F.3d 650, 653 (5th Cir.2002). Such a result is certainly possible in light of a recent decision by a Louisiana district court holding that the Program violates the state constitution. See La. Fed’n of Teachers, No. 612, 733, slip op. at 2.
In sum, the Petitioners’ claims that the Program interferes with the consent de- . cree are “ ‘entangled in a skein of state law that must be untangled before the federal case can proceed[.]’ ” See Harris Cnty. Comm’rs Court v. Moore, 420 U.S. 77, 88, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975) (quoting McNeese v. Bd. of Educ., 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963)). Accordingly, the State has a strong likelihood of establishing that the district court erred in exercising jurisdiction in light of the Pullman abstention doctrine.
3. Lack of Evidence Establishing Authority to Act Pursuant to the All Writs Act
Examining the proceedings in the district court prior to issuance of the injunction, we are further persuaded of the State’s likelihood of success on the merits based on the district court’s lack of authority to act pursuant to the All Writs Act, which serves as the district court’s self-proclaimed basis for jurisdiction: The All Writs Act provides “power [to] a federal court to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.” United States v. N.Y. Tel. Co., 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977); see also 28 U.S.C. § 1651(a). As the district court appropriately recognized, this power may be applied to individuals or entities that were not parties in the underlying litigation when their conduct frustrates the court’s order. See N.Y. Tel., 434 U.S. at 174, 98 S.Ct. 364 (citation omitted). “This authority, though, ‘is firmly circumscribed, its scope depend[s] on the nature of the case before, the court and the legitimacy of the ends sought to be achieved through the exercise of the power.’ ” Netsphere, Inc. v. Baron, No. 10-11202, 2012 WL 6583058, at *397 *6 (5th Cir. Dec. 18, 2012) (quoting ITT Cmty. Dev. Corp. v. Barton, 569 F.2d 1351, 1358-59 (5th Cir.1978)).
Three elements must be satisfied for a district court to act pursuant to this statute, and the burden of establishing them in the district court is on the Petitioners. See Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004). First, “the party-seeking issuance of the writ [must] have no other adequate means to attain the relief he desires.” Id. (alteration in original) (citation and internal quotation marks omitted). When alternative means of relief are available, the court should not issue a writ. See, e.g., Pa. Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985) (finding the use of the All Writs Act to compel transportation of prisoners was inappropriate because “[although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate”). Here, the Petitioners have alternative means of relief apart from reliance on a writ. In addition to seeking relief from the state legislature in the form of additional funding or repeal of the Program, the Petitioners may avail themselves of relief in state court. In fact, proceedings in the state court already suggest that alternative relief would be available in light of a recent decision from a state district court holding that the Program’s disbursement of education funds to private institutions violates Louisiana’s state constitution. See La. Fed’n of Teachers, No. 612,733, slip op. at 2.
Second, the party seeking the writ must meet its “burden of showing that [its] right to issuance of the writ is clear and indisputable.” Cheney, 542 U.S. at 381, 124 S.Ct. 2576 (citation and internal quotation marks omitted). The State has a strong argument that the Petitioners have not established their “clear and indisputable” right to the writ. Generally, a writ is appropriate when it .addresses a direct affront to a district court’s order. See, e.g., United States v. Hall, 472 F.2d 261, 262-64 (5th Cir.1972) (finding an injunction under the All Writs Act proper in the desegregation context to prevent a member of a militant group from intentionally violating a court order denying his entry into a high school campus).
■ Petitioners contend that the Board faces a large, general budget shortfall and that any decrease in funding due to students electing to attend schools other than their assigned public school will adversely affect . its “ability to implement” the requirements •of the consent decree. In the district court, Petitioners had the burden to provide evidence to support their contentions. Instead, the Board presented general financial data and budgets that provide a ■general and superficial overview of the school’s funding mechanism, as well as a few specific budget needs that are unrelated to schools affected by the Program.[5] The Board further relies on affidavits from administrators at . two of the private schools participating in the Program to suggest that these schools intend to expand, which in turn will adversely affect ' the Board’s ability to implement the con-, sent decree.. This evidence — based merely on general financial information and specu *398 lation that the Program will eventually expand to a point that causes them harm— fails to demonstrate immediate irreparable harm warranting relief.[6] See Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir.1985) (“Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.” (citation omitted)). The “evidence” was nothing more than a generalized concern that an already cash-strapped school board would find itself with fewer resources. No specifics about the particular decreases and the particular impact was provided to the district court.
Third, assuming the petition meets the first two requirements, a court should exercise discretion before issuing a writ to ensure it “is appropriate under the circumstances.” Cheney, 542 U.S. at 381, 124 S.Ct. 2576 (citation omitted). The All Writs Act does not grant blanket authority to enjoin state conduct in matters related to a state’s funding of its subdivisions. Instead, the authority under the All Writs Act “is to be used sparingly and only in the most critical and exigent circumstances.” Wise. Right to Life, Inc. v. Fed. Election Comm’n, 542 U.S. 1305, 1306, 125 S.Ct. 2, 159 L.Ed.2d 805 (2004) (citation and internal quotation marks omitted).
The State has made a strong showing that it is likely to succeed on the merits of the argument that the district court’s reliance on the All Writs Act was not appropriate based on the circumstances. Petitioners’ arguments during the November 26 district court hearing suggest nothing more than that the Program frustrates the consent decree by interfering with their calculations based on projections in school growth and student attendance. It is difficult to imagine, however, that the Program, which affects less than one quarter of one percent of the Parish’s students, will have a substantial enough effect on the Board’s calculations to warrant the “extraordinary remedies” provided by the All Writs Act.
The Board’s rationale leads to the con- * elusion that whenever a state legislature’s actions result in an indirect reduction in education funding a federal court can enjoin the implementation of the funding decision so long as the party seeking the writ merely shows that it is in need of funding or that a change in funding could limit its financial resources. Such a broad use of authority is not compatible with the Supreme Court’s admonition that the All Writs Act is an extraordinary form of relief.[7]
*399 B. Irreparable Harm
The irreparable injury to the State caused by the preliminary injunction weighs in favor of a stay pending appeal. See Hilton, 481 U.S. at 776, 107 S.Ct. 2113. As the State points out, the immediate implementation of the injunction will cause irreparable harm to the fifty students participating in the Program because the failure to make timely scholarship payments to the students’ schools would result in the children having to relocate during the school year. This result would frustrate the State’s program thereby causing harm to it and the students that the State seeks to serve. The injunction causes further direct irreparable harm against the State as it deprives the State of the opportunity to implement its own legislature’s decisions concerning education funding and forces it to answer for claims in federal court that are likely barred by Eleventh Amendment immunity.
C. Substantial Injury to Petitioners and Public Interest
The factors discussed above—a substantial likelihood of success on the merits and the irreparable harm to the State—are the most important. Nken, 556 U.S. at 434, 129 S.Ct. 1749. The final two factors—the potential for substantial injury to the Petitioners and the public interest—are less significant in our analysis. We recognize that the Board may face an injury if it is unable to comply with the consent decree, which could affect its ability to become a unitary school system. The evidence presented in the district court, however, belies the claim of injury to the Petitioners, at least at this point.
Finally the public interest factor leans in favor of the State. Enjoining a State from implementing its own law while an appeal is pending before a federal court invokes significant concerns related to principles of federalism and comity. These concerns are especially significant here where the State is enjoined from implementing its education funding due to an appeal of a federal court action involving claims for which the State is likely entitled to Eleventh Amendment immunity-
IV. CONCLUSION
For the reasons discussed above, we GRANT the Appellants’ motion to STAY a portion of the preliminary injunction pending appeal.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. The district court enjoined the Student Scholarships for Educational Excellence Act, La.Rev.Stat. Ann. §§ 17:4011-:4025, the Course Choice Program, La.Rev.Stat. Ann. *392 §§ 17:4002.1-.-4002.6, and certain provisions of Act 1, which focus on teacher tenure and accountability. Because the State requests a stay of the injunction only as it pertains to the Program administered pursuant to the Student Scholarships for Educational Excellence Act, we do not consider whether the injunction should be stayed as to these other provisions.

. As discussed above, this appeal presents an emergency motion to stay, which is being decided on an abbreviated briefing schedule and within a limited time. We apply only the standard governing whether a stay of the preliminary injunction should be granted. Accordingly, nothing in our opinion should be read as an intent to bind the merits panel determining whether the district court appropriately issued the injunction.

. The extent of the Board’s argument concerning this issue on appeal lies in its assertion that the injunction does not run afoul of the Eleventh Amendment to the extent that it enjoins “John White in his official capacity.” The Board does not cite any authority for this conclusion. The fact that Superintendent White is enjoined in his official capacity does not cure the potential affront to Eleventh Amendment immunity in this matter. See Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); see also Kelley, 836 F.2d at 989 ("The applicability of the bar of sovereign immunity simply is not affected by the circumstance that the nominal defendant is an individual state official, (citation omitted)).

. Because we conclude that Pullman abstention is appropriate, we need not address the abstention doctrine applied in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Younger abstention applies when; “(1) the dispute ... involve[s] an ongoing state judicial proceeding, (2) an important state interest in the subject matter of the proceeding [is] implicated, and (3) the state proceedings ... afford an adequate opportunity to raise constitutional challenges.” Tex. Ass’n of Bus. v. Earle, 388 F.3d 515, 519 (5th Cir.2004) (internal quotation marks and citation omitted).

. For instance, in its Reply Memorandum and Listing of Supporting Documentation filed in the district court on November 19, 2012,'the' Board included an exhibit discussing the projected costs to improve the Kentwood High School facility, Kentwood High School, however, is not one of the "assigned schools” or "last attending school” for any of the fifty students participating in the Program.

. Indeed, the little evidence presented is to the contrary. Prior to filing its Motion for Issuance of Writs, the Board requested a modification of the consent decree to authorize approximately $1.4 million of improvements to five schools, none of which are the "assigned school” or the "last attending school" of the fifty students enrolled in the Program. This modification of the consent decree is significant because it suggests that while the Board claims it cannot sustain the loss of MFP funding associated with the Program, the Board's budget still allows it to modify the consent to decree in order to receive authorization to allocate additional money to schools unaffected by the Program.

. The district court also purported to act pursuant to its inherent powers. The cases relied upon by the district court in the exercise of this power, however, involved the enforcement of consent decrees against parties who agreed to be bound by the decrees. See e.g., Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 435-36, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004) (enforcing consent decree against state officials who were parties to the original decree); United States v. City of Miami, Fla., 664 F.2d 435, 436 (5th Cir.1981) (limiting the effect of a consent decree on a party who did not agree to the decree). Accordingly, even if the Board presented adequate evidence that the Program conflicted with the consent decree, the All Writs Act — and not the court’s inherent power — would serve as the proper *399 source of authority to protect a consent decree from the actions of a non-party to the decree.